Paul A. BISHOP, Petitioner,

v.

TEXAS A & M UNIVERSITY, Respondent.

No. 99–0634.

Supreme Court of Texas.

June 29, 2000.

Rehearing Overruled Sept. 21, 2000.

Richard P. Hogan, Jr., David M. Gunn, Hogan Dubose & Townsend, Larry P. Boyd, Fisher Boyd Brown Boudreaux & Huguenard, Houston, for Petitioner.

John Cornyn, Laurie Rayson Eiserloh, Office of the Attorney General of Texas, S. Ronald Kiester, Office of the Attorney General of Texas, Austin, for Respondent.

PER CURIAM.

Paul Bishop sued Texas A & M University at Galveston under the Texas Tort Claims Act, TEX. CIV. PRAC. & REM.CODE §§ 101.001–.109, for injuries he sustained while playing Vlad the Impaler in a Drama Club performance of "Dracula." During the final scene, a fellow student missed the stab pad attached to Bishop's chest and stabbed him with a Bowie knife. In addition to the university, Bishop sued Michael Wonio, a local actor and director who directed the play, and his wife, Diane Wonio,

who assisted with props and the choreography of the fight scenes. The Wonios settled with Bishop before trial. At trial, Bishop alleged that, under the principle of respondeat superior, TAMU is liable for the injuries Bishop sustained as a result of the negligence of four of its employees: Michael and Diane Wonio and the Drama Club's two faculty advisors, Drs. Stephen Curley and Melanie Lesko. Because TAMU prohibits deadly weapons campuswide, Bishop argued that the Wonios were negligent in using a real knife and the Drama Club's faculty advisors were negligent in not properly overseeing the production to ensure that TAMU policies were enforced. A jury agreed, finding that both the Wonios and the faculty advisors were acting as TAMU employees when the accident occurred and were negligent in their use of tangible personal property.

The court of appeals, with one justice dissenting, reversed and rendered, holding that the Wonios were independent contractors and Drs. Curley and Lesko, although in the paid service of the university for their academic positions, were volunteers for purposes of their faculty-advisor roles. Therefore, the court of appeals held, the university could not be held liable under the Tort Claims Act. 996 S.W.2d 209, 215. We disagree and conclude that the faculty advisors were employees of TAMU at the time of Bishop's stabbing. Accordingly, TAMU is liable for the faculty advisors' negligent use of tangible personal property. Because TAMU is vicariously liable for the negligence of the Drama Club's faculty advisors, we need not decide the Wonios' status under the Act. See generally DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex.1995) (explaining that respondeat superior imposes liability on the employer for the acts of a negligent employee).

Section 101.021 of the Tort Claims Act provides that a governmental unit is liable for personal injury or death if it would, "were it a private person, be

liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code § 101.021(2). A governmental unit's respondeat-superior liability is predicated on the liability of its employee. *See DeWitt,* 904 S.W.2d at 654. Thus, Bishop may recover against TAMU if Dr. Curley or Dr. Lesko satisfies the Act's definition of "employee":

> a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Tex. Civ. Prac. & Rem.Code § 101.001(1).

The parties do not dispute that the faculty advisors were in the paid service of TAMU. And TAMU does not contend that the advisors were independent contractors or that the university did not have the legal right to control their work. However, in reversing the jury's determination that Drs. Curley and Lesko were university employees when Bishop was stabbed, the court of appeals distinguished between the faculty advisors' academic and nonacademic roles. After noting that Drs. Curley and Lesko were paid university employees for their academic positions, the court of appeals held that no evidence supports the jury's finding that, while functioning as faculty advisors, they were in TAMU's paid service. Instead, the court of appeals implicitly concluded that the Drama Club's faculty advisors were volunteers. 996 S.W.2d at 215. We disagree.

The fact that Drs. Curley and Lesko did not receive additional remuneration for their service to the university as faculty advisors is not dispositive of whether they were employees for purposes of liability under the Tort Claims Act. The evidence in support of the judgment demonstrates that although faculty members are not required to act as advisors, TAMU considered Drs. Curley and Lesko's service to the university as faculty advisors when calculating their overall compensation. Unlike the volunteer reserve-deputy sheriff in *Harris County v. Dillard,* who was never in the paid service of a governmental unit and therefore was not an employee under the Tort Claims Act, Drs. Curley and Lesko remained in the paid service of the university while advising the Drama Club and received a benefit from their advisory positions. *See* 883 S.W.2d 166, 167 (Tex.1994).

Additionally, although Drs. Curley and Lesko may have been functioning in a nonacademic capacity as faculty advisors, their responsibilities to the university remained intact. To gain university recognition, a student organization at TAMU must obtain a faculty advisor. The official student-organizations' policy and procedures manual specifies that as an advisor, a faculty member must know the rules pertaining to TAMU organizations, be aware of liability issues, and advise the organization to make reasonable and prudent decisions when planning activities. Thus, as faculty advisors, Drs. Curley and Lesko were responsible for enforcing TAMU policies and procedures.

Because the evidence is legally sufficient to support the jury's findings that Drs. Curley and Lesko were TAMU employees at the time of Bishop's injury, TAMU can be held liable for their negligence. Accordingly, without hearing oral argument, the Court grants Bishop's petition for review, reverses the judgment of the court of appeals, and remands the case to the court of appeals for further proceedings consistent with this opinion and review of the issues it did not address. *See* Tex.R.App. P. 59.1.