**TEXAS A & M UNIVERSITY, Appellant,**

v.

**Paul A. BISHOP, Appellee.**

**No. 14–97–00153–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 22, 2002.

Order Overruling Rehearing April 10, 2003.

Rehearing Overruled May 15, 2003.

650

Laurie Rayson Eiserloh, Stephen Ronald Keister, Austin, for appellant.

Larry Boyd, Richard P. Hogan, Houston, for appellee.

Panel consists of Justices HUDSON, EDELMAN, and Senior Chief Justice MURPHY.*

## OPINION ON REMAND

PAUL C. MURPHY, Senior Chief Justice (Assigned).

This appeal arises from a suit for personal injuries suffered by Paul A. Bishop while portraying "Vlad Dracula" in a play performed by the Texas A & M University at Galveston Drama Club. Texas A & M University (TAMU) challenges the judgment in favor of Bishop in eleven points of error. In our original opinion, we found legally insufficient evidence to support the jury's findings that Michael and Diane Wonio, Dr. Stephen Curley, and Dr. Melanie Lesko were employees of TAMU on the occasion in question. Therefore, we reversed and rendered judgment in favor of TAMU. The supreme court reversed, holding that legally sufficient evidence supported the jury's finding that Drs. Curley and Lesko were employees at the time of the occurrence. *Bishop v. Texas A & M Univ.*, 35 S.W.3d 605, 607 (Tex.2000). The case was remanded to our court for review of remaining issues. We affirm.

## Facts

In the Spring of 1994, the Drama Club of Texas A & M University at Galveston decided to perform the play, "Dracula" and a member of the club telephoned Michael Wonio, a local Galveston actor and director, who had directed previous Drama Club plays. Wonio agreed to direct the play. His wife, Diane Wonio, assisted with props and choreography of fight scenes. In one of the final scenes of the play, the character of Jonathan Harker impales Vlad Dracula with a knife. Diane Wonio prepared a stab pad for Bishop, as Vlad Dracula, to wear during this scene because the Wonios determined that the scene required use of a real knife. The stab pad was strapped to Bishop's chest with a target visible. Dennis Rittenhouse, another student, played the part of Jonathan Harker. On the night of the incident in question, Rittenhouse swung the knife, missed the stab pad, and stabbed Bishop in the chest.

Bishop was taken by ambulance to a hospital emergency room, where it was determined that the knife had penetrated Bishop's lung, causing a pneumothorax, or collapsed lung. Bishop remained in the hospital for eight days. Bishop testified that his grade point average declined and he continues to experience weakness, insomnia, and nightmares.

Bishop filed this negligence suit against TAMU, Drama Club faculty advisors, Drs. Stephen Curley and Melanie Lesko, and the Wonios alleging negligence. The Wonios settled with Bishop before trial. The case was then tried to a jury only on claims of negligence against the Wonios and Drs. Curley and Lesko as employees of TAMU. The jury found the Wonios and the Drama Club faculty advisors acted as employees on the night in question and were negligent in the use of tangible personal property. The jury awarded Bishop $350,000 in damages. After an off-set for settlement credit, the trial court rendered judgment for $250,000.

## Sufficiency of the Evidence of Employee Status

■ In its first two points of error, TAMU asserts the trial court erred in overruling its motion for judgment notwithstanding the verdict and its motion for new trial because there was legally or factually insufficient evidence to support

* Senior Chief Justice Murphy sitting by assignment.

the jury's answer to question number one, regarding which individuals were TAMU's employees. Question one asked the jury if Mike and Diane Wonio, Stephen Curley, and Melanie Lesko, were acting as employees of the university on the occasion in question. In its opinion, the supreme court addressed the issue whether the evidence was legally sufficient to support the jury's findings that Drs. Curley and Lesko were TAMU employees at the time of Bishop's injury. *Bishop*, 35 S.W.3d at 607. The supreme court found that there was legally sufficient evidence and thus, held that TAMU could be held liable for the employees' negligence.[1] *Id.* Thus, we first address whether the evidence is factually sufficient to support the jury finding with respect to Drs. Curley and Lesko.

### 1. Drs. Curley and Lesko

■■■ In deciding factual sufficiency questions, the appellate court must review all of the evidence. *Lofton v. Tex. Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). The court may set aside the finding only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Further, when reversing a trial court's judgment after concluding the supporting evidence is insufficient, the court of appeals must detail the relevant evidence introduced at trial and clearly state why the jury's finding is factually insufficient. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). The court should state in what regard the contrary evidence greatly outweighs the evidence supporting the jury's verdict. *Id.; Alm v. Aluminum Co. of America*, 717 S.W.2d 588 (Tex.1986).

The instructions for jury question one stated that an employee is not a volunteer, but is a person in the paid service of the university. The instruction further stated an employee is not an independent contractor or a person who performs tasks, the details of which the university does not have the legal right to control.

■■■ In Texas, a governmental unit is immune from tort liability unless the Legislature has waived immunity. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998); *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994). A state agency such as TAMU shares this governmental immunity. *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). The Texas Tort Claims Act provides for a limited waiver of governmental immunity under specified circumstances. *Id.;* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Under the act, a governmental unit may be held liable for personal injury caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be held liable under Texas law. *Id.* at (2). A governmental entity can be held liable for personal injuries only through the acts of its employees. *Dumas v. Muenster Hosp. Dist.*, 859 S.W.2d 648, 650 (Tex.App.— Fort Worth 1993, no writ). The Act defines "employee" as a "person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a

---

1. Because the supreme court has held that the evidence is legally sufficient to support the finding that Drs. Curley and Lesko were employees at the time of Bishop's injury, the supreme court made an even broader conclusion, holding that "TAMU *is liable* for the faculty advisors' negligent use of tangible personal property." *Id.* at 606 (emphasis added). Despite this statement by the supreme court, we must first consider the issues of factual sufficiency of the evidence supporting the finding of employee status, negligence, and proximate cause before concluding that TAMU is indeed liable.

person who performs tasks the details of which the governmental unit does not have the legal right to control." Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2) (Vernon Supp.2002).

■ The evidence shows that Dr. Curley is employed by TAMU as a professor of English and head of the Department of General Academics. Dr. Lesko teaches organic chemistry and is Assistant Department Head of the Degreed Science Department. Thus, there was evidence Drs. Curley and Lesko were paid employees of the university for their academic positions. Drs. Curley and Lesko also acted as faculty advisors to the Drama Club. A number of witnesses testified that faculty advisors were volunteers and were not paid for this service. Volunteers are not included in the Texas Tort Claims Act definition of "employee." *Harris County v. Dillard,* 883 S.W.2d 166, 167 (Tex.1994). A review of the record reveals no testimony establishing that the faculty advisors were paid for performing the non-academic role of faculty advisor to the Drama Club.

Nonetheless, both Curley and Lesko testified that TAMU encouraged its faculty to serve as advisors and sponsors to student organizations and activities. Dr. Curley agreed that, although serving as a faculty advisor to a student organization is not a separately paid service to the university, it is a positive addition to his resume. Dr. Lesko testified that additional faculty activities, such as serving as a faculty advisor to student organizations, are considered by her superiors in her annual review and affect her compensation, particularly given that she is on a tenure track. Thus, there is some evidence that the faculty advisors received a benefit from their service.

Furthermore, certain policies and procedures of TAMU require faculty advisors to know the rules pertaining to student organizations, to be aware of liability issues,

and to advise the organization concerning activities. All university recognized student organizations are required to have a faculty advisor. There was testimony that Drs. Curley and Lesko, as faculty advisors to the drama club, were responsible for enforcing TAMU policies, including the university prohibition against guns on campus. Thus, through the faculty advisors, the university had a right of control over the student organization activities to the extent they followed school policies and procedures. We find the evidence is factually sufficient to support the jury finding that Drs. Curley and Lesko were employees of TAMU at the time of the incident in question.

## 2. The Wonios

TAMU next challenges the legal and factual sufficiency of the evidence supporting the jury's findings that Michael and Diane Wonio were employees of TAMU at the time of the occurrence. Having already upheld the jury's finding that the faculty advisors were employees, TAMU can be held vicariously liable for the employees' negligence, and therefore, we need not address the Wonios' status. *Bishop,* 35 S.W.3d at 606.

### Instructions on Independent Contractor Status

In point of error three, TAMU claims the trial court erred in denying appellant's motions for instructed verdict on the issue of an independent contractor not constituting a person who is in the paid service of the unit of government. In point of error four, TAMU challenges the trial court's denial of a requested instruction regarding the definition of an independent contractor. Because TAMU only argues that the Wonios were independent contractors, and we have already held that TAMU can be held vicariously liable for the negligence of

the faculty advisors, we need not address these issues. *Bishop*, 35 S.W.3d at 606.

## Negligent Use of Tangible Personal Property

In points of error five and six, TAMU challenges the jury's finding in response to question two that the Wonios[2] and Drs. Curley and Lesko were negligent. Appellant claims there is no evidence, or alternatively, insufficient evidence, that any of these individuals used the knife that caused the personal injuries in this case. In point of error seven, appellant challenges the trial court's denial of appellant's requested instruction 2, which would have advised the jury that neither negligent supervision nor the university's decision whether to develop policies and procedures constitutes use of tangible personal property.

Under the Texas Tort Claims Act, "tangible property" is property that is capable of being handled, touched or seen. *Robinson v. City of San Antonio*, 727 S.W.2d 40, 43 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). For "use" of property to occur under the Act, one must " 'put or bring [the property] into action or service; to employ for or apply to a given purpose'." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996) (citing *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208 (Tex. 1989)).

The case law is conflicting in this area. As this court has said, "[i]t is technically possible to characterize any imaginable action as a case involving use of tangible personalty." *Lowe v. Harris County Hosp. Dist.*, 809 S.W.2d 502, 504 (Tex. App.—Houston [14th Dist.] 1989, no writ).

For example, "use" of tangible property has been held to include non-use in some cases. *See Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297 (Tex.1976) (failure of Texas Tech coaching staff to furnish proper equipment found to be tantamount to providing inappropriate equipment thereby constituting use of tangible property); *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169 (Tex.1989) (failure of MHMR employees to provide life preserver to patient with epilepsy and occasional seizures held to be tantamount to providing inappropriate equipment as in *Lowe*). More recently, the supreme court has specifically classified these cases as the "outer bounds" of what can be classified as "use." *Kerrville State Hosp.*, 923 S.W.2d at 585. Although both *Lowe* and *Robinson* involve the non-use of property, the court has subsequently asserted that it did not intend in deciding those cases to allow both use and non-use of property to result in a waiver of immunity because such a result would essentially abolish the governmental immunity. *Id.* Accordingly, the court has held that the precedential value of *Lowe* and *Robinson* is limited to "claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Id.*

Bishop argued in this case that TAMU is liable for the negligent exercise of its assumption of responsibility for the proper use of tangible personal property, which in this case was the knife. This allegation essentially alleges a failure to properly supervise the students in *their* use of tangible property. The supreme

2. As discussed in previous sections of this opinion, we have upheld the jury finding that the faculty advisors were employees of TAMU and thus, TAMU can be held vicariously liable for their negligence. 35 S.W.3d at 606–607. Accordingly, we need not address these issues as to the Wonios.

court has not yet addressed the issue whether negligent supervision can be a use of tangible property under the statute, but the courts of appeals have addressed this issue and are split. Some intermediate appellate courts have held that a failure to supervise does not fall within the statutory definition of use of property. *See Laman v. Big Spring State Hosp.*, 970 S.W.2d 670 (Tex.App.—Eastland 1998, pet. denied) (holding that failure of hospital staff to supervise sedated patient was not use or condition of tangible property); *Hein v. Harris County*, 557 S.W.2d 366 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) (negligence of supervisory employees in creating or permitting the existence of conditions that may have influenced employee to secure a pistol did not establish sufficient relationship between supervisory employees and use of the pistol to bring claim within Tort Claims Act); *Gonzales v. Lubbock State Sch.*, 487 S.W.2d 815 (Tex.Civ.App.—Amarillo 1972, no writ) (allegation of negligent supervision did not assert that the negligence was in the execution of any

formulated personnel policy for which defendant might be liable).[3] Other courts, however, have found a use of property where the allegation was negligent supervision. *See Sem v. State*, 821 S.W.2d 411 (Tex.App.—Fort Worth 1991, no writ) (found proof sufficient to raise a fact issue whether the State retained sufficient control over the work such that it owed a duty to the contractor's employees to exercise reasonable care in its control or supervision of placement of warning signs to protect highway workers); *Smith v. Univ. of Tex.*, 664 S.W.2d 180 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (finding trial court erred in granting summary judgment to university where appellant alleged negligent use of tangible real and personal property in the failure to supervise use of the real and personal property). Although the supreme court has not specifically addressed the question whether negligent supervision constitutes use of tangible personal property under the statute, the supreme court has mentioned the *Smith* case in a subsequent opinion without passing on the merits of *Smith*.[4]

**3.** TAMU also cites to *Garza's Estate v. McAllen Indep. Sch. Dist.*, 613 S.W.2d 526 (Tex. Civ.App.—Beaumont 1981, writ ref'd n.r.e.) and *Naranjo v. Southwest Indep. Sch. Dist.*, 777 S.W.2d 190 (Tex.App.—San Antonio 1989, writ denied). Both of these cases are distinguishable because they involved allegations against school districts and school district liability is limited to torts involving the use of motor vehicles. Tex. Civ. Prac. & Rem. Code Ann. § 101.051 (Vernon 1997).

**4.** In *Harris County v. Dillard*, 883 S.W.2d 166 (Tex.1994), the majority distinguished *Smith* as a case in which liability was predicated on the actions of a paid university employee and not on the actions of a volunteer. *Id.* at 167. *Smith*, however, does address the actions of a volunteer and finds that the university could be liable for the actions of the volunteer because he was appointed by the employee to carry out the duties of the paid state employee. *Smith*, 664 S.W.2d at 190. The *Dillard* dissenting justices note the majority's mis-

reading of *Smith* and one of the dissenting justices, Justice Spector, states that the majority's discussion of *Smith* implies that liability for a volunteer's actions could be predicated on a claim of negligent supervision. *Dillard*, 883 S.W.2d at 170 (Spector, J., dissenting). Based on this, Justice Spector observes that the majority might have found liability if the plaintiff had simply pled negligent supervision; however, Spector notes that prior case law suggests that supervision may be a discretionary duty for which no liability can attach. *Id.* (citing *County of Brazoria v. Radtke*, 566 S.W.2d 326 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.)). Spector adds that until the issuance of the *Dillard* majority, prior case law appeared unfavorable toward a claim for negligent supervision. *Dillard*, 883 S.W.2d at 170. The majority responded to Spector's statements, including the following remarks:

> Justice Spector's dissent is ambivalent about the importance of *Smith* to the present case. At first, the dissent claims that

In *Smith,* the plaintiff was a volunteer official at the shot put competition and was injured when he was struck in the head by a shot. 664 S.W.2d at 184. Smith alleged his injury was caused by the negligence of certain university officials in failing to properly supervise volunteer officials' use of real and personal property. *Id.* The court found this raised an allegation of negligence in the use of tangible personal property under the Tort Claims Act. *Id.* The court also offered the following analysis regarding supervision of non-employees:

> This brings us to the question: if the University were a private corporation which had a paid employee whose responsibility it was to oversee work to be done, with authority to appoint unpaid volunteer officials to assist in the work to be done (here, the conduct of the track meet and the shot-put event) and such paid employee was negligent in the performance of his appointed duties, would the private corporation be liable under the doctrine of *respondeat superior* for the negligence of the appointed, unpaid volunteer in carrying out his appointed duties? We hold that liability does exist under such circumstances.

*Id.* at 190. This is analogous to the situation presented here. The faculty advisors had the responsibility to oversee the conduct of the Drama Club, at least to the extent that university policies and regulations were followed. By failing to supervise the Wonios and the Drama Club, the university can be held liable.

The case of *Christilles v. Southwest Texas State University,* 639 S.W.2d 38 (Tex. App.—Austin 1982, writ ref'd n.r.e.) is also

illuminating. In *Christilles,* a drama student was injured when the drinking glass he was holding during a dress rehearsal shattered and caused extensive nerve and tendon damage. *Id.* at 39. The production was directed by a university employee who made the decision to use a breakable glass. *Id.* The court found a use of tangible personal property where the plaintiff pleaded and proved his "injury resulted from the use of property either defective or inappropriate (use of breakable drinking glass rather than a safer one)." *Id.* at 41. Similarly, Bishop's pleading and proof of use of a real knife constituted proof of the use of property inappropriate for the purpose for which it was used.

Thus, we hold that the failure to properly supervise the Drama Club and its use of stage props (in this case, the knife) is a negligent use of tangible personal property. Because Bishop alleged that TAMU employees were negligent in their supervision of the Drama Club's use of stage props such as the knife in this case, this raised an allegation of negligent use of personal property under the Tort Claims Act. Thus, the trial court did not err in denying a requested instruction to question 2, instructing the jury that the decision to develop or not develop policies and procedures and negligent supervision do not constitute "use" of tangible personal property. Having found that this allegation is viable, we next turn to the complaint that the evidence was insufficient to support the jury's affirmative finding on this issue.

 The record shows that TAMU encouraged faculty members to act as advisors to student organizations, such as the

---

*Smith* provides plaintiffs' arguments, "a reasonably strong footing"; in the end, the dissent acquiesces in the view that *Smith* is erroneous.
. . . .

Assuming *Smith* was rightly decided—an issue on which we venture no opinion—it provides no support for plaintiffs' claims in the present case.
*Id.* at 167 n. 2

Drama Club. Policies and procedures at TAMU require faculty advisors to student organizations to know and enforce university rules, including the university prohibition against weapons on campus. Testimony also showed that faculty advisors were responsible for advising student organizations so they could make reasonable and prudent decisions in planning activities. Finally, there was testimony that faculty advisors were to attend the meetings or rehearsals˙ of student organizations when possible. In this case, the record shows the faculty advisors never attended any rehearsals for the play. Testimony showed that the university, through its faculty advisors, had a right of control over the student activities, such as the direction of the play and use of props in this case. We find this evidence sufficient to support the jury's finding that the faculty advisors were negligent in supervising the use of tangible personal property.

In point of error 8, TAMU claims the trial court erred in denying appellant's motion for instructed verdict both of which address the issue that sovereign immunity has not been waived unless an employee's use of tangible personal property proximately causes injury to the plaintiff. Under these points, appellant argues that negligent supervision is not a use of tangible personal property and, therefore, there is no proximate cause. Alternatively, appellant argues that the trial court should have allowed an instruction that negligent supervision is not a use of tangible property. Because we have already held that negligent supervision is a use of tangible personal property, TAMU's arguments fail.

### Official Immunity

TAMU next argues that, if we find the faculty advisors and the Wonios were employees, then the trial court erred in denying appellant's requested instruction and in denying appellant's motion for instructed verdict on the defense of official immunity. Appellee responds that appellant is not entitled to the defense of official immunity because that defense is only for claims based on the exercise of governmental discretion.

Case law states that official immunity may protect state employees who are sued in their individual capacities, see, e.g., Jackson v. Stinnett, 881 S.W.2d 498, 500 (Tex.App.—El Paso 1994, no writ), and if the employee is protected from liability by official immunity, the governmental entity retains its sovereign immunity. DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex.1995). In other words, although official immunity protects state employees from individual liability, the state entity may benefit from the employee's official immunity even if the employee is not sued individually. Because the state entity only acts through its employees, it should benefit from a defense that benefits state employees.

The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials. Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex.1994). The elements of the defense are (1) the performance of a discretionary function (2) in good faith (3) within the scope of the employee's authority. Kassen, 887 S.W.2d at 9; City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.1994). Appellee argues that the defense of official immunity only applies if the discretionary acts are governmental in nature. In support of this argument, appellee cites City of Columbus v. Barnstone, 921 S.W.2d 268 (Tex. App.—Houston [1st Dist.] 1995, no writ) and Baker v. Story, 621 S.W.2d 639 (Tex. Civ.App.—San Antonio 1981, writ ref'd n.r.e.). In Baker, the court noted that

Texas courts distinguish judicial officers, quasi-judicial personnel, and ministerial functionaries, finding that judicial officers have absolute immunity as long as they have jurisdiction and that quasi-judicial personnel have immunity as long as they act in good faith within the scope of their authority. 621 S.W.2d at 644. Since *Baker* was decided, however, the supreme court has provided more guidance regarding the scope of official immunity.

In *Kassen v. Hatley*, the court addressed whether medical doctors who work for a government institution are entitled to official immunity. 887 S.W.2d at 9. The court determined that, in the case of medical personnel, there must be a distinction between governmental and medical discretion. *Id.* at 11. Thus, the court found that, if the doctor was exercising purely medical discretion at the time of the injury, official immunity could not arise. *Id.* The court added that, in making the determination whether the discretion exercised by the employee is governmental or not, the courts must focus on the facts of the individual case and the underlying policies promoted by official immunity. *Id.* For example, the court implied in *Kassen* that, if the doctors had been performing policy-making or administrative responsibilities, not shared by private-sector doctors, they would have been performing discretionary governmental functions, entitling them to official immunity. *Id.* at 10.

In this case, there is no claim that the faculty advisors were not performing discretionary duties; rather, the parties disagree over whether these discretionary acts were governmental or not. Thus, we must decide whether oversight of a student drama club production is a governmental function or not, taking into consideration the policy behind official immunity. As the supreme court has said, "[t]he public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions." *Id.* at 8. The United States Supreme Court has stated:

> [O]fficials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties— suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr v. Matteo*, 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

The supervision of student organizations is a function that is performed by faculty in both state and private schools. Even considering the lofty principles underlying the defense of official immunity, it is difficult to classify the supervision of student clubs and their productions as a governmental function distinct from such supervision at non-governmental institutions. In *Christilles v. Southwest Texas State University*, 639 S.W.2d 38 (Tex.App.—Austin 1982, writ ref'd n.r.e.), the court found a professor's decision to use a real glass, rather than a non-breakable prop glass, was not a determination of governmental policy, but was instead the exercise of professional or occupational discretion, and therefore, official immunity did not apply. *Id.* at 43. Similarly, the Wonios' decision to use a real knife, and the faculty advisors' negligent supervision of the production, involved professional or occupational discretion, not governmental discretion. Therefore, we hold that official immunity is not applicable to the activities performed by the Wonios and the faculty advisors under the facts of this case.

## Denial of Motion to Strike
## Investigative Report

In its eleventh and final point of error, TAMU claims the trial court erred in denying its motion to strike the investigative report, or in the alternative, all three versions of the investigative report. Harry Stege, the former police chief at TAMU, investigated the incident and prepared a report. The office of the TAMU General Counsel, requested that Chief Stege revise his report to omit legal opinions. Ultimately, Stege prepared three versions of his report and sent memos to the file regarding the general counsel's requests for revisions. TAMU objected to producing the three versions of the report in discovery, but was compelled to produce all three versions. TAMU filed a motion to protect, which was denied. At trial, TAMU filed a motion to strike the three versions of the report and the memos prepared by Stege. This motion was also denied and all three versions were introduced into evidence.

TAMU claims that the trial court should have granted its motion to strike on the grounds that Stege, as a witness, was not qualified to make the conclusions he makes in the three reports, that the three versions of the report were highly prejudicial and could have confused the jury, and that the probative value of the reports was substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury. The only authority cited by TAMU under this point of error is TEX.R. EVID. 403.

Appellee responds that TAMU has waived any possible error by the following acts: (1) not objecting to plaintiff's exhibit eight, the recommendations attached to Chief Stege's report, and (2) publishing Chief Stege's recommendations to the jury by leaving them in plain view of the jury while questioning witnesses. The record

reflects that before Plaintiff's Exhibit 7, the reports, was admitted into evidence TAMU's counsel objected on the grounds stated in their motion to strike and on the following grounds: (1) it was prepared in anticipation of litigation; (2) it was contrary to the Texas Tort Claims Act; (3) it is not supported by the pleadings; (4) it deals with discretionary governmental evidence; and (5) it is irrelevant because it does not relate to tangible personal property. The trial court overruled the objections and Exhibit 7 was admitted.

TAMU's counsel cross-examined Chief Stege about the reports and omissions from the original report. Following this cross-examination, TAMU's counsel approached the bench regarding Plaintiff's Exhibit 8, Chief Stege's recommendations based on the reports. TAMU's counsel stated she did not waive her objection to the recommendation page. Appellee's counsel argued that TAMU had opened the door about everything taken out of the report and had insinuated that nothing omitted from the original report was damaging to TAMU. Appellee's counsel claimed that, by doing this, TAMU had waived its objection. Appellee's counsel further argued that TAMU's counsel had published the recommendation page to the jury and had waived objection to that as well. The trial judge ruled that TAMU had waived its objection.

 In its brief, TAMU does not mention the trial judge's ruling regarding waiver and makes no argument about waiver. When a party itself introduces evidence that is otherwise improper, or permits the evidence to be introduced, error is waived. *McInnes v. Yamaha Motor Corp. U.S.A.*, 673 S.W.2d 185, 188 (Tex. 1984). Thus, TAMU waived any objection to Plaintiff's Exhibit 8, the recommendations page. It is unclear, however, wheth-

er the trial judge's ruling also concerned Plaintiff's Exhibit 7, Chief Stege's reports.

 The decision to admit or exclude evidence is committed to the discretion of the trial court and is reviewed for abuse of that discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). However, if an appellant introduced the same evidence or evidence of a similar character to that he is challenging, his objection is waived. *See McInnes*, 673 S.W.2d at 188. Certainly, by publishing Exhibit 8 to the jury, TAMU waived any objection to that exhibit, but the publishing of Exhibit 8 waived objection to Exhibit 7 only if it is evidence of a similar character to that in Exhibit 7. After reviewing these two exhibits, we find that, although the two exhibits are somewhat similar in character, there are major substantive differences. Exhibit 7 includes the three versions of Chief Stege's report, which discusses what happened and Stege's conclusions regarding wrongdoing by certain personnel and recommendations to prevent future incidents. Exhibit 8 is merely a list of Chief Stege's recommendations. Thus, the two exhibits overlap only regarding recommendations for changes to be instituted that could prevent future incidents. Because Exhibit 7 contains much more information, we cannot say that introduction of Exhibit 8 to the jury necessarily waived any objection to Exhibit 7. Thus, we find no waiver of TAMU's objections to Exhibit 7 merely because TAMU's counsel published Exhibit 8 to the jury.

 TAMU also argues that Exhibit 7 should not have been admitted because it was irrelevant and prejudicial, and because Chief Stege was not qualified to make the conclusions he made in the reports. These were also grounds raised in the motion to strike. At the time appellee offered Exhibit 7 for admission, TAMU objected to the evidence on the grounds raised in its motion to strike and on other specified grounds.

 Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. Exhibit 7 is clearly relevant in that it describes interviews with all of the persons involved, discusses school policies, and offers Chief Stege's conclusions and recommendations. Furthermore, there is little merit to TAMU's claim that Chief Stege is unqualified. In its brief, TAMU does no more than assert this conclusion. No analysis or authority is offered for this claim. Obviously, at the time TAMU officials asked Chief Stege to produce a report they must have thought he was qualified to do so. The record shows that before Chief Stege was chief of police at TAMU, he was the former Police Chief in Tulsa, Oklahoma. Thus, we find the evidence is relevant.

 Lastly, TAMU claims the evidence should not have been admitted because it was prejudicial under Rule 403. When a party objects to evidence under Rule 403, the trial court must conduct a balancing test, weighing the danger of prejudice against the probative value of the evidence. *Waldrep v. Texas Employers Ins. Ass'n*, 21 S.W.3d 692, 703 (Tex. App.—Austin 2000, pet. denied). Even if the trial court's decision constituted error, the judgment will not be reversed unless the error probably caused rendition of an improper judgment. TEX.R.APP. P. 44.1. In making this determination, the appellate court must review the entire record. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995). Reversible error in connection with evidentiary rulings usually is not found unless the appellant can demonstrate that the whole case

turns on the particular evidence admitted. *Id.* at 753–54.

We find no reversible error here. Appellant makes no argument why this evidence was prejudicial and our review of the reports shows nothing that was not admitted by testimony during the trial. Thus, even if it were error to admit this evidence, the admission of this evidence was not harmful.

## Conclusion

Having found factually sufficient evidence to support the jury's finding that the faculty advisors were employees of TAMU and that the actions of the advisors constituted negligent use of tangible personal property, we uphold the jury's findings in this regard. We further uphold the trial court's admission of Chief Stege's reports and the trial court's determination that official immunity is inapplicable in this case. Accordingly, we affirm the trial court's judgment.

RICHARD H. EDELMAN, Justice, concurring on motion for rehearing.

As noted in our prior opinion, when official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000). A governmental employee is entitled to official immunity for: (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith. *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex.2002).

In this case, it is undisputed that the faculty advisors' actions (or inactions) were within the scope of their authority and that they were discretionary to the extent of being non-ministerial.[1] Similarly, I do not believe there is a serious issue as to whether the faculty advisors were acting (or failing to act) in good faith.[2] Rather, the difficulty is determining whether *Kassen*[3] applies.

Ordinarily, if the other two elements are met, official immunity extends to any action or decision by a state employee that is discretionary (rather than ministerial).[4] *See Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex.1994). However, government-employed medical personnel are not entitled to immunity for actions based on their exercise of purely medical discretion unmixed with any governmental discretion (the "*Kassen* exception"). *See id.* at 11–12. *Kassen* thus held that a summary judgment and directed verdict were erroneously granted to a state-employed doctor and nurse, respectively, because they

1. As contrasted from a ministerial act, which requires obedience to orders or the performance of a duty to which the actor has no choice, a discretionary action involves deliberation, discretion, decision, or judgment. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994). The focus is on whether the function is discretionary, not whether the actor had discretion to act negligently while discharging that function. *See id.* at 653.

2. The issue of good faith in this case is whether any reasonable faculty advisor, under similar circumstances, could have believed that the faculty advisors' failure to supervise the play closely enough to discover and prohibit the use of a real knife was justified based on the information they possessed when the conduct occurred. *Cf. Telthorster*, 92 S.W.3d at 465. Because faculty advisors of reasonable competence could disagree on this issue, the faculty advisors acted in good faith as a matter of law. *See id.*

3. *See Kassen v. Hatley*, 887 S.W.2d 4 (Tex. 1994).

4. Presumably, this is because the discretion exercised by most state employees is entirely governmental.

each failed to establish that the discretion they exercised (in deciding not to admit a mental patient to their hospital) was at least partly governmental. *See id.* at 7, 11–12.[5]

The State argues that the only type of state employee to whom the *Kassen* exception applies is a health care provider. Because the faculty advisors in this case were clearly not medical professionals, the State contends that their undisputedly non-ministerial actions automatically satisfy the discretionary act element of official immunity.

Although *Kassen* was decided with regard to state health-care employees,[6] the opinion does not limit its scope to such employees, and its rationale for drawing a distinction between governmental and non-governmental discretion[7] could also apply to other areas of state employment, if any, where wholly non-governmental discretion is exercised. Any such ambiguity is further compounded by footnote 8 of *Kassen,* which does not appear to contemplate restricting the issue solely to state medical personnel (and which would not appear relevant or necessary in a purely medical context):

> Official immunity applies to executive officials and to lower level personnel who exercise governmental discretion. *See* RESTATEMENT OF TORTS (SECOND) § 895D cmt. d (1977). We decline to attempt precisely to define when a government employee's acts involve "governmental" discretion, but recommend that courts consider the following factors:

1. the nature and importance of the function that the employee is performing,

2. the extent to which passing judgment on the exercise of discretion by the employee will amount to passing judgment on the conduct of a coordinate branch of government or an agency thereof,

3. the extent to which the imposition of liability would impair the employee's free exercise of discretion,

4. the extent to which financial responsibility will fall on the employee,

5. the likelihood that harm will result to the public if the employee acts,

6. the nature and seriousness of the type of harm that may be produced, and

7. the availability to the injured party of other remedies and forms of relief. *See id.* § 895D cmt. f.

*See Kassen,* 887 S.W.2d at 12 n. 8. We thus lack a sufficient basis to conclude, as the State contends, that the *Kassen* exception is necessarily limited to state medical employees. Conversely, because the State has not chosen to address, legally or factually, whether the discretion exercised by the faculty advisors in this case was governmental in nature, we cannot reach that issue.

J. HARVEY HUDSON, Justice, dissenting to the denial of rehearing.

On remand from the Texas Supreme Court, this Court held that Michael and Diane Wonio's decision to use a real knife in a drama production at Texas A & M University at Galveston, and the faculty advisors' negligent supervision of the pro-

---

**5.** Whether a governmental activity is discretionary is a legal question. *State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 326 (Tex.2002). In *Kassen,* the defendants failed to offer either facts or effective legal arguments to establish a govern-

mental component for their decision. *See Kassen,* 887 S.W.2d at 12.

**6.** *See id.* at 10–12.

**7.** *See id.*

duction, was an act of "professional or occupational discretion." Because the defense of official immunity applies only to claims based on the exercise of "governmental" discretion, we held Texas A & M was not entitled to successfully assert the defense. On rehearing, Texas A & M contends our reliance on *Kassen v. Hatley*, 887 S.W.2d 4 (Tex.1994) was misplaced. Because I agree, I respectfully dissent to the denial of Texas A & M's motion for rehearing.

Official immunity is an affirmative defense. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). Case law states that official immunity may protect state employees who are sued in their individual capacities, *see, e.g., Jackson v. Stinnett*, 881 S.W.2d 498, 500 (Tex.App.-El Paso 1994, no writ), and if the employee is protected from liability by official immunity, the governmental entity retains its sovereign immunity. *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex.1995). When, as in this case, the governmental unit's liability under the Texas Tort Claims Act is based on respondeat superior for an employee's negligence arising from the use of tangible personal property, the governmental unit's liability is derivative. *Id.* at 654. Thus, official immunity, like any other affirmative defense available to the employee, is relevant to the governmental entity's liability. *Id.*

The elements of the defense are (1) the performance of a discretionary function (2) in good faith (3) within the scope of the employee's authority. *Chambers*, 883 S.W.2d at 653. Discretionary acts are those that "require personal deliberation, decision, and judgment, whereas ministerial acts require obedience to orders." *Garza v. Salvatierra*, 846 S.W.2d 17, 22 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.).

It is undisputed that the faculty advisors were performing discretionary duties. Citing *Kassen*, however, Bishop contends the defense of official immunity applies only if the discretionary acts are "governmental" in nature. In *Kassen*, the court addressed whether medical doctors who work for a government institution are entitled to official immunity. 887 S.W.2d at 9. The court determined that, in the case of medical personnel, there must be a distinction between "governmental" and "medical" discretion. *Id.* at 11. The court found that, if the doctor was exercising purely "medical" discretion, rather than policy-making or administrative responsibilities at the time of the injury, the doctor was not entitled to the defense of official immunity. *Id.*

I believe the Supreme Court intended, in *Kassen*, to draw a distinction only between "governmental" and "medical" discretion, not between "governmental" and "non-governmental" discretion generally. First, the phrase "non-governmental discretion" is nowhere found in the majority opinion. Second, the court explicitly rejected drawing a "distinction between activities that are *uniquely* governmental and those that are not." *Id.* at 10. Third, the plaintiffs framed their argument in terms "that such actions by government-employed physicians and nurses are only medical functions, not governmental functions." *Id.* at 9. Fourth, the Supreme Court has never applied this aspect of its holding in *Kassen* outside the medical profession. *See Gross v. Innes*, 988 S.W.2d 727 (Tex.1998) (holding *Kassen* applies to para-medics). Finally, and most importantly, the court posited its holding in terms of distinguishing "between *governmental* and *medical* discretion." *Id.* at 11. The court summarized its holding by stating:

> We hold that government-employed *medical* personnel are not immune from

tort liability if the character of the discretion they exercise is *medical* and not governmental. A state-employed *doctor or nurse* has official immunity from claims arising out of the exercise of governmental discretion, but is not immune from liability arising from the exercise of *medical* discretion. Courts should look at the character of the discretion exercised in each instance.

This approach is not the same as the *Armendarez*'s "uniquely governmental" test which focused on a state employee's function. Official immunity does not turn on whether a health-care employee's discretion was uniquely governmental or *medical*. The focus must remain upon the facts of the individual case and the underlying policies promoted by official immunity. We anticipate difficult cases in which government-employed *medical* personnel will have duties and responsibilities that coincide with private-sector providers. In such cases, if governmental factors and concerns colored the *doctor's or nurse's* discretion, policy considerations may still call for official immunity. Such decisions necessarily involve a balancing of individual rights and the public interest.

*Id.* at 11–12 (emphasis added).

Accordingly, the distinction between medical and governmental discretion discussed in *Kassen* does not apply to the facts of this case. I would hold that *Kassen* is limited to cases involving doctors and medical personnel employed by governmental entities. Because I believe *Kassen* is inapplicable to the facts of this case and therefore, categorization of the type of discretion exercised is inappropriate, I would hold there was no basis for finding the faculty advisors were performing any function other than a discretionary one.

Although argued only on rehearing, Bishop states that, even if the faculty advisors were performing discretionary duties that fact would not entitle them to official immunity because the advisors' actions could not have been in good faith. Bishop claims the advisors' decision to violate university policy and allow deadly weapons to be wielded by Drama Club students cannot constitute the good faith performance of a discretionary duty.

This argument is similar to that made in *Rivas v. City of Houston*, 17 S.W.3d 23 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In *Rivas*, the appellant claimed an ambulance driver had no discretion not to use the lights and sirens when the ambulance was in emergency mode. *Id.* at 29. This court responded to appellant's claim by stating that, under well-settled law, "we must focus on whether [the governmental employee] was 'performing a discretionary function, not on whether [he] had discretion to do an allegedly wrongful act while discharging that function'." *Id.* (quoting *Harris County v. Ochoa*, 881 S.W.2d 884, 887 (Tex.App.-Houston [14th Dist.] 1994, writ denied)). Although this reasoning from *Rivas* concerned the element of discretion, we find it also applicable to the good faith element because "the good faith standard is not equivalent to a general negligence test, which addresses what a reasonable person *would have done*, rather than what a reasonable official *could have believed.*" *Rivas*, 19 S.W.3d at 903 (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n. 1 (Tex. 1997)).

The test of whether a governmental employee acted in good faith is one of "objective legal reasonableness." *City of Lancaster*, 883 S.W.2d at 656. Under this test, the employee will be deemed to have acted in good faith if a reasonably prudent employee, under the same or similar cir-

cumstances, could have believed that the employee's acts were justified. *Vela v. Gomez*, 4 S.W.3d 911, 913 (Tex.App.-Corpus Christi 1999, no pet.)(citing *Chambers*, 883 S.W.2d at 656).

The record contains much testimony concerning the role of the faculty advisors. The Dean of Texas A & M University at Galveston, David James Schmidly, testified faculty advisors perform an advisory role, approving financial requests and assisting with scheduling events. Although the responsibilities of advisors include attendance at club meetings whenever possible, Schmidly testified that he did not believe advisors should have attended entire play rehearsals. Schmidly emphasized that the advisors were not compensated for advisor activities. Unless the advisors attended entire rehearsals, Schmidly did not see how the advisors could have discovered a real knife was being used in the play. William Charles Hearn, Senior Student Life Affairs Dean and Executive Associate Campus Dean, testified that advisors have a responsibility to ensure compliance with university regulations, but he did not believe the advisors should have attended more rehearsals. Hearn defined the advisors' role as giving advice, approving check requests, helping to develop student leadership, and to oversee, but not directly supervise the clubs. The advisors testified that they assisted with finances and approval to use facilities, but neither advisor attended any of the rehearsals of this play. Dr. Curley, one of the advisors to the Drama Club, testified that he understood his role to be merely advisory and not supervisory. Curley added that if he had known about the use of the knife, he would have taken action.

Because the evidence showed the faculty advisors' role was more advisory than supervisory, a reasonably prudent faculty advisor could have believed that there was no need to attend the play rehearsals. The evidence does not show the advisors had any reason to believe direct supervision was required or necessary. Accordingly, the evidence shows the faculty advisors acted in good faith as a matter of law. Because the evidence established as a matter of law that the faculty advisors were performing discretionary acts in good faith, I would hold the trial court erred in refusing to grant Texas A & M's motion for instructed verdict on the defense of official immunity.

For these reasons, I respectfully dissent to the denial of Texas A & M's motion for rehearing.