TEXAS A & M UNIVERSITY,
Petitioner,

v.

Paul A. BISHOP, Respondent.

No. 03–0448.

Supreme Court of Texas.

Argued Sept. 28, 2004.

Decided Jan. 21, 2005.

Greg Abbott, Atty. Gen., Jeffrey S. Boyd, Thompson & Knight, Laurie Rayson Eiserloh, Bickerstaff Heath Smiley Pollan, S. Ronald Keister, Barry Ross McBee, Rafael Edward Cruz, Lisa Royce Eskow, Joseph Hughes, Cherie Kay Batsel, Edward D. Burbach, Office of Atty. Gen., Austin, for Texas A & M University.

Larry P. Boyd, Fisher Boyd Boudreaux & Huguenard, L.L.P., Jennifer Bruch Hogan, Richard P. Hogan, Peter M. Kelly, Hogan & Hogan, L.L.P., Houston, for Paul Bishop.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice OWEN, Justice WAINWRIGHT, and Justice MEDINA joined.

### The Texas Tort Claims Act

*To [waive], or not to [waive]: that is the question:*
*Whether 'tis nobler in the mind to suffer*
*The slings and arrows of outrageous [legislation],*
*Or to take arms against a sea of troubles,*
*And by opposing end them?*
William Shakespeare, Hamlet act 3, sc. 1.

While acting in a university drama club production, the plaintiff in this case was inadvertently stabbed in the chest when a fellow actor missed the stab pad the plaintiff wore that was intended to deflect the blow. The plaintiff sued the university under the Texas Tort Claims Act, alleging that the university was liable for the negligence of the drama club's faculty advisors and the play's director. *See* Tex. Civ. Prac. & Rem.Code § 101.021. The court of appeals affirmed the trial court's judgment in the plaintiff's favor, holding that the faculty advisors' actions constituted a "use" of tangible personal property for which the Tort Claims Act waived governmental immunity. 105 S.W.3d 646, 656; Tex. Civ. Prac. & Rem.Code § 101.021(2). We hold that the faculty advisors' alleged failure to properly supervise the props that the director chose does not constitute a use of tangible personal property within the Tort Claims Act's meaning, and that the play's director was an independent contractor for whose acts or omissions the university is not liable. Accordingly, we reverse the court of appeals' judgment and dismiss the plaintiff's suit.

I

Texas A & M University at Galveston (TAMU) offers no theater curriculum, but has a drama club. The club is a voluntary student organization whose members receive no grades or class credit for participation. From the club's inception and at the time the incident made the basis of this suit occurred, two faculty advisors, Dr.

Stephen Curley and Dr. Melanie Lesko, provided the club logistical support and served as the club's liaisons to the university.

In the spring of 1994, the drama club engaged Michael Wonio, a local actor and director who had directed previous club plays, to direct its production of *Dracula*. His wife, Diane Wonio, assisted with props and choreography. The Wonios had no written contract with TAMU or the drama club, but had an oral understanding that they would be paid a fee at the end of the production if box office revenues were sufficient. In this instance they received a fee of $300.

According to the drama club's bylaws, the director was responsible for selecting any props that might be used for a production. During rehearsal, the Wonios decided that a real knife was needed for the production's dramatic final scene in which Dracula's rival, Jonathan Harker, impales Dracula in the chest with a knife. The student playing Harker was provided a Bowie knife, and Diane Wonio fashioned a stab pad for Paul Bishop, who played Dracula, to attach to his chest to shield him from the blow. TAMU had a safety policy prohibiting deadly weapons on campus. Although the faculty advisors, as university officials, had the right to enforce the policy, they were not informed of the Wonios' decision to use a real knife in the production.

Four performances were scheduled on campus, and the first went smoothly. But during the second performance, the student playing Harker missed the stab pad, driving the knife into Bishop's chest and puncturing his lung. Bishop was hospitalized for eight days, and this suit resulted.

Bishop sued TAMU under a theory of *respondeat superior* for the actions of its alleged employees, the Wonios, Curley, and Lesko. Bishop alleged that the Wonios were negligent in deciding to use a real knife and in failing to provide an adequate stab pad. He also alleged that the faculty advisors were negligent in failing to enforce the university's safety policy prohibiting deadly weapons on campus. Bishop sued the Wonios individually as well, but settled with them before trial.

The jury found that the Wonios, Curley, and Lesko were all employees of the university, and that their negligent use of tangible personal property caused Bishop's injuries. The trial court rendered judgment on the verdict, but the court of appeals reversed and rendered judgment for TAMU, holding that TAMU's immunity was not waived because neither the Wonios nor the faculty sponsors were employees under the Texas Tort Claims Act. *Tex. A & M Univ. v. Bishop*, 996 S.W.2d 209, 215 (Tex.App.-Houston [14th Dist.] 1999), *rev'd*, 35 S.W.3d 605 (Tex.2000). We reversed, holding that the faculty sponsors were employees of TAMU rather than volunteers, but did not reach the issue of the Wonios' status. *Bishop v. Tex. A & M Univ.*, 35 S.W.3d 605, 606 (Tex. 2000) ("*Bishop I*"). We remanded the case to the court of appeals to review the issues it had not addressed. *Id.* at 607.

On remand, the court of appeals held that the faculty sponsors' actions constituted a "use" of tangible personal property under the Tort Claims Act, for which TAMU was liable. 105 S.W.3d at 656–57; *see* Tex. Civ. Prac. & Rem.Code § 101.021(2). Because its holding supported the trial court's judgment against TAMU, the court of appeals did not address TAMU's liability for the Wonios' conduct. 105 S.W.3d at 653. We granted TAMU's petition for review to consider application of the Texas Tort Claims Act to the facts presented.

## II

■ Because TAMU is a governmental entity, the doctrine of governmental immunity shields it from liability for the negligence of its employees absent a waiver of that immunity. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex.1994). The Texas Tort Claims Act provides a limited waiver when personal injury or death is caused by a "use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code § 101.021(2).

Bishop presents two grounds for TAMU's liability: (1) the conduct of the Wonios, who directed the play, and (2) the acts and omissions of Curley and Lesko, the drama club's faculty advisors. TAMU responds that the Tort Claims Act's waiver for tangible personal property use does not apply because the Wonios were not employees for whose conduct TAMU could be liable, and the faculty sponsors' actions did not constitute a "use" of property within the statute's purview. TAMU also claims that common-law official immunity further protects the university from liability for the faculty advisors' conduct.

## III

We held in *Bishop I* that faculty advisors Curley and Lesko were employees of the university under the Tort Claims Act. 35 S.W.3d at 607. Accordingly, if they "use[d]" tangible personal property within the Act's terms, the university's immunity is waived and TAMU is liable for their conduct. Tex. Civ. Prac. & Rem.Code § 101.021(2).

We recently interpreted the Tort Claims Act's "use" requirement in *San Antonio State Hospital v. Cowan*, 128 S.W.3d 244 (Tex.2004). In that case, Cowan was involuntarily committed to the San Antonio State Hospital after exhibiting psychotic behavior, acute depression, and suicidal tendencies. *Id.* at 245. The commitment order required the Hospital to take possession of Cowan's personal effects, which the Hospital did. *Id.* But the Hospital allowed Cowan to keep his suspenders and walker, which he later employed to kill himself. *Id.* The plaintiffs claimed, and the court of appeals held, that the Hospital misused the walker and suspenders by allowing Cowan to have them. *Id.* at 246. We disagreed, holding that "section 101.021(2) waives immunity for a use of personal property only when the governmental unit is itself the user." *Id.* at 245–46. In response to Cowan's contention that the Hospital "used" the walker and suspenders by giving them to Cowan for his use, we said: "A governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more." *Id.* at 246.

■ In this case, the drama club faculty advisors did not themselves "put or bring [the knife] into action or service" or "employ [the knife] for or apply [it] to a given purpose," as we have said the term "use" intends. *Id.* To the extent Bishop claims the faculty advisors allowed the Wonios to provide the knife by failing to properly supervise the production, such negligent supervision, without more, does not constitute a "use" of personal property that would waive TAMU's immunity under section 101.021(2), else the failure to prevent any accident that involves tangible personal property would come within the statute's purview. "Such a result would be tantamount to abolishing governmental immunity, contrary to the limited waiver the Legislature clearly intended." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996).

Bishop claims our holding in *Cowan* is distinguishable because, unlike a Bowie

knife, the walker and suspenders that Cowan used to kill himself were not "inherently unsafe." *Cowan*, 128 S.W.3d at 245. Bishop claims this case is more analogous to those in which immunity was held waived when a state actor provided equipment that lacked an integral safety component, in this case an adequate stab pad. *See Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169 (Tex.1989) (providing swimming attire without a life preserver); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297 (Tex.1976) (providing a football uniform without a knee brace); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528 (Tex. 1975) (providing a hospital bed without bed rails). But we have said that these cases represent "the outer bounds of what we have defined as use of tangible personal property," and have applied them narrowly only when an integral safety component is entirely lacking rather than merely inadequate. *Clark*, 923 S.W.2d at 585. In *Clark*, we held that prescribing a medication less effective than an alternative treatment would have been does not mean that the medicine provided lacked an integral safety component. We distinguished *Lowe* and *Robinson*, explaining:

> For *Lowe* to apply ... we must assume that the university would have waived its immunity even if it had provided Lowe with a knee brace as long as Lowe could show that another type of knee brace would have better protected him. Likewise, for *Robinson* to apply, we must assume that MHMR would have waived its sovereign immunity even if it had provided Robinson a life preserver if Robinson could show that MHMR should have provided him with a better one.

*Id.* We determined that, in deciding *Lowe* and *Robinson*, we did not intend to allow both use and non-use (*i.e.*, failure to provide a *more effective* safety feature) to effect a waiver of immunity under the Act. *Id.* Similarly, Bishop's claim that the knife was inherently unsafe without an adequate stab pad does not mean that an integral safety component was lacking for purposes of governmental waiver under the Act.[1] We conclude that the faculty advisors' conduct did not waive TAMU's immunity.

## IV

■ TAMU next contends that the university cannot be liable for the Wonios' alleged negligence because they were not TAMU's employees for purposes of the Tort Claims Act. The Act defines an "employee" as a person in the paid service of a governmental unit, but provides that the term "does not include an independent contractor ... or a person who performs tasks the details of which the governmental unit does not have the legal right to control." Tex. Civ. Prac. & Rem.Code § 101.001(2). In the first appeal in this case, the court of appeals held that the Wonios were independent contractors as a matter of law because there was no evidence to support the jury's finding that the Wonios were TAMU employees on the occasion in question. 996 S.W.2d at 214. We agree.

■ There are several factors to consider in determining whether or not a worker is an independent contractor:

(1) The independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final

---

1. To the extent *Smith v. University of Texas*, 664 S.W.2d 180 (Tex.App.-Austin 1984, writ ref'd n.r.e.), and *Christilles v. Southwest Texas State University*, 639 S.W.2d 38 (Tex.App.-Austin 1982, writ ref'd n.r.e.), are inconsistent with our holding today, we disapprove them.

results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job. *Indus. Indem. Exch. v. Southard,* 138 Tex. 531, 160 S.W.2d 905, 906 (1942). When the material underlying facts are not in dispute and can give rise to only one reasonable conclusion, whether a worker was an employee or an independent contractor is a question of law. *Id.* This is such a case.

To demonstrate employee status, Bishop points to evidence that TAMU (through its employees, the faculty sponsors) could hire and fire the directors, reviewed and approved the script of the play, and could control what props were used by enforcing the university's safety policies. Bishop also cites evidence that TAMU paid the Wonios with university funds, and provided facilities and electricity for their production. Finally, Bishop relies upon the Wonios' testimony that TAMU had the final say over their activities, and that if TAMU intervened in their work with a demand, they would have to comply or "withdraw."

The Wonios' situation is analogous to that presented in *Anchor Casualty Company v. Hartsfield,* 390 S.W.2d 469 (Tex. 1965). There, we held that a worker who performed work requiring special skill, furnished his own tools, came and went at his own discretion, was paid by the job, and was not on the employer's tax rolls was an independent contractor as a matter of law. *Id.* at 471. In this case, the evidence demonstrated that the Wonios performed the specialized task of directing a play, were paid by the job, furnished their own props, had no contract, and were not on TAMU's tax rolls. TAMU's approval of the script did not go beyond dictating the final result of the Wonios' work. And the Wonios' testimony that TAMU could terminate them if they refused to comply with a demand demon-

strates only a minimal degree of control that exists in any working relationship and is no evidence of a level of control detailed enough to indicate employee status. *See Cont'l Ins. Co. v. Wolford,* 526 S.W.2d 539, 541 (Tex.1975) (the fact that a supervisor could dismiss a contractor if unsatisfied with his work was not evidence of employee status); *Anchor Cas. Co.,* 390 S.W.2d at 471.

We agree with the court of appeals that there is no evidence in the record to support the jury's finding that the Wonios were employees, and hold that the Wonios were independent contractors as a matter of law. Accordingly, their actions could not constitute a "use" that would waive TAMU's immunity. Tex. Civ. Prac. & Rem.Code § 101.021(2).

## V

Because TAMU's immunity from suit was not waived under the Texas Tort Claims Act, the trial court lacked subject-matter jurisdiction over Bishop's cause of action. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 637 (Tex.1999). We therefore reverse the judgment of the court of appeals and dismiss Bishop's suit against TAMU.

Justice BRISTER and JUSTICE Green did not participate in the decision.