In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00077-CV


______________________________




TEXAS STATE TECHNICAL COLLEGE, Appellant



V.



ADAM BEAVERS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 04-1177




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Adam Beavers, a Marshall High School student, enrolled in a college level technical course,
diesel engine testing and repair, at Texas State Technical College (TSTC). After a few weeks'
training on diesel engines, Beavers and a fellow student attempted to flip the diesel engine over to
work on the other side by using a hydraulic hoist furnished by TSTC. In the process, Beavers' hand
was caught between the hoist leg and the engine, resulting in serious injuries. Beavers sued TSTC,
alleging TSTC's immunity was waived because the injuries were caused by a condition or use of
tangible personal property and further alleged TSTC employees acted without legal or statutory
authority. TSTC filed a plea to the jurisdiction and a motion to dismiss and sever alleging it was
immune from the suit. The trial court denied TSTC's motions. TSTC brings this interlocutory
appeal as authorized by Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2006). We affirm the judgment
of the trial court. 

 Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which
the State or certain governmental units have been sued unless the State consents to the suit. Tex.
Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). It is undisputed that TSTC
is such a governmental unit. Unless waived by the Texas Tort Claims Act, TSTC is entitled to
sovereign immunity. 



Standard of Review

 In reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in
favor of the nonmovant and look to the nonmovant's intent. Tex. Ass'n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 446 (Tex. 1993). We are not required to look solely to the pleadings when
deciding a plea to the jurisdiction; we may consider evidence relevant to jurisdiction when it is
necessary to resolve the jurisdictional issue raised. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
555 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is a question of law subject
to de novo review. Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.
2002); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). Whether a pleader has
alleged facts which affirmatively demonstrate a trial court's subject-matter jurisdiction is a question
of law reviewed de novo. Likewise, whether undisputed evidence of jurisdictional facts establishes
a trial court's jurisdiction is also a question of law. Miranda, 133 S.W.3d at 225-26. Therefore, we
will review de novo the trial court's order. Here, the material facts of this incident are not disputed. 
Issue on Appeal

 TSTC brings forward one point of error alleging the trial court erred in denying the plea to
the jurisdiction and the motion to dismiss and sever because Beavers failed to plead and prove his
injuries were caused by a use of tangible personal property by a State employee as required under
the Tort Claims Act. Beavers responds to this allegation and asserts that he presented and proved
that his injuries were caused by (1) a condition of tangible personal property, (2) a use of tangible
personal property, and (3) TSTC's acts engaged without legal and/or statutory authority. 

 The Texas Tort Claims Act expressly waives sovereign immunity for "personal injury and
death so caused by a condition or use of tangible personal or real property if the governmental unit
would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac.
& Rem. Code Ann. § 101.021(2) (Vernon 2005). 

Factual Background

 Beavers and the other students had been shown by their instructor, Dave Barbieri, the
procedure necessary to turn a diesel engine over using mechanical hoists. On November 19, 2003,
Beavers and another student, Greg Atwood, began the process of lifting the diesel engine. This
involved inserting two bolts into the top part of the engine, connecting a chain (approximately three
feet in length) to each bolt, and then connecting the hoist hook to the chain. Atwood then operated
the lever lifting the engine, and Beavers inserted some wooden blocks under the engine. The side
of the engine resting on the hoist leg slipped, and Beavers' hand was caught between the hoist leg
and the engine. There is no dispute that all the equipment involved was supplied by TSTC for the
purpose of training students. 

Condition or Use of Tangible Personal Property

 TSTC argues that the Texas Tort Claims Act does not waive sovereign immunity unless the
plaintiff pleads and proves two requirements:

 (1) The injuries must be caused by a "use of tangible personal . . . property"; and 

 (2) A paid employee of the governmental unit must be the "user" of the property. The "use" of tangible personal property has been interpreted to mean "put or bring into action
or service" or "employ for or apply to a given purpose." Tex. A & M Univ. v. Bishop, 156 S.W.3d
580, 583 (Tex. 2005). TSTC alleges the person using that property must be shown to be an
employee of the governmental unit. From that premise, TSTC argues that only Beavers and Atwood
were using the hydraulic hoist, and since neither of them are employees, Beavers has not supplied
the requisite proof. 

 The courts of Texas have struggled to define the limits of "use" and "condition" which serve
to waive immunity under the Texas Tort Claims Act. Some decisions interpreting the statute
authorized a more expansive concept of what actions entailed the "use" of tangible personal property
by a governmental entity. For example, in City of Waco v. Hester, 805 S.W.2d 807 (Tex.
App.--Waco 1990, pet. denied), the use of a day room in which a young man was being held, and
in which the police had also placed a man with known violent homosexual tendencies, was held to
be adequate proof of a use of tangible personal property. Other cases refused to follow Hester. See
Tarrant County Hosp. Dist. v. Henry, 52 S.W.3d 434, 442 (Tex. App.--Fort Worth 2001, no pet.)
(declining to follow Hester); Scott v. Prairie View A & M Univ., 7 S.W.3d 717, 720 (Tex.
App.--Houston [1st Dist.] 1999, pet. denied) (stating day room and door were not defective and
were too attenuated from actual injury to be considered proximate cause of inmate's injury); Laman
v. Big Spring State Hosp., 970 S.W.2d 670, 672 (Tex. App.--Eastland 1998, pet. denied) (refusing
to follow Hester to extent it holds that a room is personalty or that a cause of action will lie for
negligent use of real property and noting that Hester is better supported by court's reasoning that
television set was tangible personal property). 

 In Vela v. City of McAllen, 894 S.W.2d 836 (Tex. App.--Corpus Christi 1995, no pet.), it
was held that the use of a booking room by the city police was sufficient to waive immunity. "Use"
of the room may include arranging furniture to facilitate the booking process. It is foreseeable that
an individual in the booking room may be injured if the booking room is not properly nor safely
arranged. This would be true particularly if the individual had some known medical condition or
impairment, such as epilepsy. "Conceivably, negligent or improper 'use' of a room may very well
cause personal injury." Id. at 840. Other courts disagreed for various reasons. See Laman, 970
S.W.2d at 672 ("To the extent that Vela and Hester can be understood to state that a room is
personalty or that a cause of action will lie for the negligent use of real property, we respectfully
decline to follow our sister courts. The duty of a real property owner with regard to others is defined
as a premises defect."). 

 Supplying a prisoner/lineman with a tool belt that is "insufficient or inappropriate" because
it was not "free floating" and slipped, causing injuries to the workman, was sufficient to waive
immunity under the statute. Tex. Dep't of Corrections v. Jackson, 661 S.W.2d 154 (Tex.
App.--Houston [1st Dist.] 1983, writ ref'd n.r.e.). 

 More recently, the Houston First Court of Appeals held that a razor wire fence constructed
by the Department of Criminal Justice in the recreational area for prisoners waived immunity. 

 The razor wire was tangible property in that it was corporeal, concrete, and had a
palpable existence. Moreover, TDCJ put the razor wire into service for a given
purpose by placing the wire along the perimeter fence to deter inmates from escaping. 
This use of the razor wire did more than merely furnish the condition that made
appellant's injury possible; it was a direct factor in appellant's injuries. We believe
that injuries proximately caused by a negligent placing of razor wire in locations
where a person might accidently come into contact with it are also proximately
caused by a use of tangible property under circumstances where a private person
would be liable. Therefore, we hold that the TTCA waives sovereign immunity for
appellant's negligence claims. 

Retzlaff v. Tex. Dep't of Crim. Justice, 135 S.W.3d 731, 741 (Tex. App.--Houston [1st Dist.] 2003,
no pet.).

 TSTC cites two cases in arguing that Beavers did not plead and prove that his injuries were
caused by a use of tangible property by a State employee. San Antonio State Hosp. v. Cowan, 128
S.W.3d 244 (Tex. 2004); Bishop, 156 S.W.3d at 583. 

 In Cowan, a patient was committed to a state hospital due to psychotic behavior, depression,
and suicidal tendencies. 128 S.W.3d at 245. The hospital allowed the patient to maintain possession
of his suspenders and walker. The patient used the suspenders and a pipe from the walker to commit
suicide. The Texas Supreme Court concluded it must be shown that the governmental body was the
user of the tangible property. The court framed the question as: "The issue here is whether merely
providing someone with personal property that is not itself inherently unsafe is a 'use' within the
meaning of the Act." Id. The court held that such is not a use by the governmental entity. Thus, the
hospital's immunity could only be waived by its use of Cowan's walker and suspenders, not by
Cowan's use of them. ("Respondents assert only that the Hospital gave Cowan his walker and
suspenders; they do not allege that the Hospital put the suspenders and walker into service or
employed them for a given purpose. By providing Cowan his walker and suspenders, the Hospital
did not 'use' them within the meaning of section 101.021(2)." Id. at 246.) Here, it is undisputed that
the hydraulic hoist used to suspend the engine that fell on Beavers' hand was employed and placed
into service by TSTC for the purpose of instructing students in the class. Although the instructor's
hands were not physically on the hoist when the injury occurred, one must take into account the
entirety of the circumstances under which the incident arose. The purpose of the school and the
objective of the incident giving rise to the injury was to teach the student. The student, after having
been given instruction by the teacher, proceeded to do as he had been directed, and thus "learn by
doing." The use of the equipment as made available by the school for this task was essential to the
entire purpose of the exercise which was taking place; all of it was conducted under the teacher and
student relationship with the teacher instructing the student on the proper use of the personal
property being employed. It is disparate from a circumstance of a patient who hangs himself with
his own suspenders.

 In Bishop, a drama club, directed by independent contractors, performed a play in which one
of the actors stabbed the other with a knife because he missed the "stab pad." The directors had
decided a real knife should be used. 156 S.W.3d at 582. Two faculty advisors provided the club
logistical support and served as the club's liaison to the university. Id. The Texas Supreme Court
held the faculty advisors, as employees of Texas A & M, did not "put or bring [the knife] into action
or service" or "employ [the knife] for or apply [it] to a given purpose." Id. at 583. Further, the
directors of the production were independent contractors as a matter of law, for whom the university
was not responsible. Id. at 585. 

 In Bishop, the university did not select or employ a real knife to be used in the production.
That was done by a person for whom the university was not responsible. Id. at 583. The Texas
Supreme Court further held that, even if the faculty advisors allowed the independent contractor
directors to provide the knife, such failure to properly supervise does not constitute a "use" of
personal property that would waive immunity. Id. Otherwise, the failure to prevent any accident that
involves personal property would come within the statute's purview. Id. 

 The facts here differ from Cowan and Bishop in several respects. Here, TSTC selected and
employed the tangible personal property that was used in hoisting an engine that physically contacted
Beavers' hand and caused personal injury. However, no TSTC employee operated the hoisting
equipment; the hoist was operated by Beavers and Atwood. The negligence alleged by Beavers is
that TSTC "negligently equipped" the hydraulic hoist with only a three-foot length of chain and two
wooden blocks to perform the exercise and that the students followed the instructions in using the
hoist. In Cowan, the governmental unit took possession of the suspenders and walker, but allowed
the patient to possess and presumably use them. In Bishop, failing to properly supervise the
director's choice to use a knife in the dramatic production did not constitute a "use" of the personal
property that would waive the university's immunity. Id. at 583. Merely supplying nondefective
property to be used by others and nothing more is not the sort of "use" contemplated by the statute
to waive immunity. However, if the governmental unit supplies or provides equipment that lacks
an integral safety component, it has engaged in a "use" that would serve to waive immunity. See id.
at 584. (1)

 At one time, the Texas Supreme Court held that failing to provide proper protective
equipment waived immunity under the statute. Lowe, 540 S.W.2d at 300 (university allegedly failed
to provide knee brace for player with knee injury). Other cases holding similarly are Overton
Memorial Hospital v. McGuire, 518 S.W.2d 528 (Tex. 1975) (negligently providing hospital bed
without bed rails is a use or condition of tangible personal property and waives immunity); Robinson,
780 S.W.2d 169 (failure to provide life preserver to mentally-handicapped child waived immunity). 
In referring to Lowe and Robinson cited above, the Texas Supreme Court stated, "These cases
represent perhaps the outer bounds of what we have defined as use of tangible personal property." 
Clark, 923 S.W.2d at 585. Moreover, "the precedential value of these cases is therefore limited to
claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety
component and that the lack of this integral component led to the plaintiff's injuries." Id. 

 The integral safety component must be entirely lacking, rather than merely inadequate. 
Bishop, 156 S.W.3d at 584, citing Clark, 923 S.W.2d at 585. Stated conversely, supplying safety
components that are inadequate, but not entirely lacking, does not constitute a use of personal
property so as to waive immunity. 

 Here, Beavers alleges the 

 condition of the movable hydraulic hoist caused the diesel engine to slip and fall
crushing Adam's hand. The hoist's boom length was set at the incorrect position. 
And, the three-foot chain attached to the end of the boom was not the proper rigging
equipment for lifting a 650 pound diesel engine. The hoist with these two conditions,
caused Adam Beavers' injuries for which TSTC would be liable were it a private
person according to Texas law. 


Beavers further alleges he was following instructions provided by the class instructor. Beavers has
provided evidence from an expert, George J. Greene, that (1) the three-foot length of chain provided
by TSTC to attach the engine to the hoist was improper and a chain sling or spreader should have
been used to balance the suspended engine, and (2) the hoist boom length position was improperly
set, leading to the unstable balance of the engine on the hoist. Another expert, P. Kim Luker, opined
that the "root cause" of the injury was that the engine shifted due to TSTC's failure to perform a
Process Safety Analysis on the use of the crane to roll the engine, including proper rigging, support
equipment, safety practices, and the failure to ensure that instructors were qualified to instruct
students in the safe use of hoisting equipment. Shad Miller, the expert designated by the hoist
manufacturer, testified the hoist was not equipped with a four-point rigging assembly, only a two-point assembly. The four-point assembly would have been safe because it would allow the engine
to be lifted evenly instead of on two corners diagonally. 

 This testimony presents evidence from the plaintiff that TSTC was negligent in providing
equipment which was improperly equipped to turn over the engine or in failing to provide the
students with equipment which would have allowed a safe manner in which to roll or flip over the
engine. However, we do not find any evidence that an integral safety component was completely
lacking or omitted. 

 So, in this case, we have an instance of a pleading supported by evidence that a governmental
unit was negligent in providing equipment to students in its class because the configuration of the
equipment was one of the proximate causes of the student's injury. We have found that this
testimony does not support a finding that an integral safety component was completely lacking. 
Further, no employee of the governmental unit was operating the equipment at the time of the injury. 
Does the governmental unit "use" the tangible personal property when it negligently places
equipment (improper configuration for lifting and turning 650-pound engine) into service, instructs
the student in its use, and directs the student to use the property? We do not believe the Bishop and
Cowan cases mandate a negative answer to this question. 

 In Cowan, the governmental unit did nothing to the personal property (suspenders and walker
of the patient). It merely allowed the patient access to his own property. In no way could it be said
that the governmental unit used the personal property except to allow the patient access to the
property. The court stated, "A governmental unit does not 'use' personal property merely by allowing
someone else to use it and nothing more." (2) Cowan, 128 S.W.3d at 246 (emphasis added). In
explaining this rationale, the court illustrated that, if more than merely allowing access to property
is shown, a different result may ensue. The Texas Supreme Court explained that, in Overton (where
the state hospital supplied the plaintiff with a bed without bed rails), "The hospital did not merely
allow the patient access to the bed; it actually put the patient in the bed as part of his treatment." Id. 
Here, TSTC did not merely allow access to the engine hoist assembly; it configured the assembly
and placed it into service, instructed Beavers in its use, and directed that he use it. The property was
then used by Beavers as instructed and anticipated by TSTC. Considerably more use of the property
by TSTC is shown than merely allowing someone else access to personal property. There is no
dispute that the engine and hoist were owned or controlled by TSTC. The allegation is not simply
that TSTC failed to supply equipment (nonuse of personal property), but also that the equipment it
made available was supplied in a negligent fashion which negligence was one proximate cause of
the injury (use of personal property). 

 Neither do we believe Bishop controls this case. In Bishop, the university did not supply the
knife in question. The faculty advisors were not involved in the selection of the knife, which was
done by the independent contractors for whom the university was not responsible. The court also
found that no liability could attach to the university for the faculty advisors' alleged negligent
supervision of the production in allowing the use of a knife. Here, there is no evidence an
independent contractor provided the property involved. Implicit in the discussion in Bishop is the
proposition that, if the university employees had selected the knife to be used in the production and
therefore "put or [brought] [the knife] into action or service," such conduct would have constituted
a use of tangible personal property that proximately caused the injuries, thereby waiving the
immunity under the statute even though no employee of the university physically inflicted the knife
wound. Such actions would have shown more than merely allowing access to the knife or negligent
supervision of the production. Further, the court in Bishop explained in detail that the directors, who
supplied the knife and stab pad, were not employees, but independent contractors, for whose actions
the university was not responsible. Once again, the implicit holding is that, had the directors been
employees who supplied the knife and stab pad, the actions of the directors would have constituted
a "use" that would waive the university's immunity even though no employee action inflicted the
knife wound. 

 TSTC's sole issue on appeal is that Beavers "failed to plead and prove that his injuries were
caused by a use of tangible personal property by a State employee as required under the Tort Claims
Act." TSTC's argument essentially is that Beavers must allege that a state employee was physically
operating the personal property at the time of Beavers' injury. Since the injury occurred when
Beavers and a classmate were operating the equipment, it is argued there is no showing that an
employee of TSTC used the property. An inanimate legal entity can only act by its employees. In
re Mktg. Investors Corp., 80 S.W.3d 44, 50 (Tex. App.--Dallas 1998, no pet.). Here, TSTC selected
and placed into operation the engine hoist to be used by the students. Beavers alleged and presented
some proof that TSTC negligently equipped the hydraulic hoist which was to be used for classroom
instruction and that use of such equipment was a proximate cause of Beavers' injuries. We believe
that this use by TSTC complies with the mandate set out in Cowan that a waiver of immunity by
Section 101.021(2) occurs only when "the governmental unit is itself the user." See Cowan, 128
S.W.3d at 246. 

 We believe that, when a governmental unit does more than merely allow another access to
personal property, but also negligently equips the property, intentionally puts it into service for use
by another with full knowledge of its intended use, and instructs the manner of its use, and when the
personal property so supplied is in fact used in the manner and for the purpose the governmental unit
intended and such use of the tangible personal property is a proximate cause of injury, the
governmental unit has used tangible personal property in such a manner as to waive immunity under
the Tort Claims Act. 

 Having found that the trial court's judgment should be affirmed on the above ground, it is
unnecessary to consider Beavers' alternative theory for sustaining the judgment. We affirm the
judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: January 24, 2007

Date Decided: March 2, 2007

1. Some cases have analyzed the lack of an integral safety component with reference to the
"condition" of the tangible personal property. See Univ. of N. Tex. v. Harvey, 124 S.W.3d 216, 223
(Tex. App.--Fort Worth 2003, pet. denied) (barrels of ice without ice scoop found to be a
"condition" of tangible personal property--ice scoop was integral safety component). The
requirement regarding an integral safety component was recognized by the Texas Supreme Court
in Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 585 (Tex. 1996). In that case, the Texas Supreme
Court made a distinction between use and nonuse of tangible personal property. It held that Lowe
v. Tex. Tech Univ., 540 S.W.2d 297 (Tex. 1976) (involving failure to furnish knee brace to football
player), and Robinson v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169 (Tex. 1989) (failing to provide
epileptic with life preserver while swimming), represented "perhaps the outer bounds of what we
have defined as use of tangible personal property." Clark, 923 S.W.2d at 585. Whether the
requirement is analyzed under the "condition" or "use" section of the statute, the Texas Supreme
Court has made it clear that, unless the governmental agency has "used" tangible personal property
in some other manner so as to waive immunity, merely supplying the property for another's use,
without more, does not waive immunity unless the supplied property is completely lacking an
integral safety component. 
2. In Nunez v. City of Sampson Park, 197 S.W.3d 837 (Tex. App.--Fort Worth 2006, no pet.),
the Fort Worth court likewise found that merely making personal property available (bunk bed, shoe
strings) and nothing more, is not a use by the governmental unit.