673 S.W.2d 185 (1984)
Lindsey McINNES, Petitioner,
v.
YAMAHA MOTOR CORP., U.S.A., Respondent.
No. C-2579.
Supreme Court of Texas.
June 20, 1984.
Rehearing Denied July 18, 1984.
*186 Dante Mattioni and Francis X. Kelly, Philadelphia, Pa., Spivey & Grigg, Broadus A. Spivey and Paul E. Knisely, Austin, White, Huseman, Pletcher & Powers, Anthony E. Pletcher, Corpus Christi, for petitioner.
Guy Allison and Kathryn Snapka, Corpus Christi, for respondent.
RAY, Justice.
Lindsey McInnes brought this suit against Yamaha Motor Corporation, U.S.A., and other defendants, to recover for injuries he received in a motorcycle accident which occurred on November 2, 1974, in Corpus Christi, Texas. McInnes claimed that as he was operating his 1973 Yamaha TX 650 motorcycle, the motorcycle went out of control and crashed into a highway guardrail, causing him to be rendered a quadriplegic.[1] All defendants except Yamaha were either dismissed or granted judgment prior to trial. Against Yamaha, McInnes pleaded causes of action in negligence, strict liability, breach of warranty, and deceptive trade practices.
Trial was to a jury. The jury found that the frame of the motorcycle involved in the accident was defectively designed, that Yamaha failed to give McInnes adequate warnings regarding use of the motorcycle, and that McInnes' actual damages totalled approximately $3.9 million. The jury also found that neither defective design nor failure to warn was a producing cause of the accident. The jury further found that the motorcycle did not develop an uncontrollable wobble prior to the accident and that McInnes' failure to keep a proper lookout was a proximate cause of the accident. The trial court rendered judgment upon the *187 verdict that McInnes take nothing. The court of appeals affirmed. 659 S.W.2d 704 (Tex.App.1983). Before this court, McInnes brings four points of error concerning evidentiary matters. We affirm the judgments of the courts below.
We first address McInnes' argument that the trial court improperly excluded from evidence that portion of the deposition of Leo Lake taken on May 29, 1981. The deposition was filed with the trial court on June 8, 1981, the date trial began. McInnes contends that in the excluded portion of the deposition, Lake, a Yamaha official, acknowledged that the 1973 Yamaha TX 650 could wobble at speeds less than forty miles per hour. There was testimony at trial that McInnes was travelling at a speed of forty miles per hour or less when the accident occurred. McInnes asserts that because the excluded testimony of Lake was the only direct admission by Yamaha that its 1973 TX 650 motorcycle was subject to "low speed wobble," exclusion of the testimony was reversible error. The argument is that the jury probably would have found that the defectively designed frame of the motorcycle caused McInnes' accident if it had heard testimony by an official of Yamaha that the motorcycle could wobble at relatively low speeds.
We do not reach the question of whether the trial court erred in excluding the May 29, 1981, portion of Lake's deposition, because McInnes has failed to preserve the point. The statement of facts reveals that the trial court held a hearing on the admissibility of the deposition in question outside the presence of the jury. Yamaha claimed that the deposition was inadmissible because it had been deprived of an opportunity to cross-examine Lake during the taking of the deposition. Counsel on the two sides then argued at length about who was at fault for Yamaha's failure to cross-examine Lake. After the trial court ruled that the disputed portion of Lake's deposition was inadmissible, the jury returned to the courtroom and trial continued. Counsel for McInnes did not even attempt to perfect a proper bill of exceptions containing the proffered evidence, as required by Texas Rule of Civil Procedure 372. The excluded testimony is not set forth in a formal bill of exceptions, nor does it otherwise appear in the statement of facts. Therefore, McInnes' assignment of error regarding the exclusion of Lake's deposition testimony has not been properly preserved. See Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex. 1984).
McInnes argues that since Lake's deposition was already on file with the trial court when it was excluded from evidence, the deposition itself constitutes a sufficient bill of exceptions. We disagree. The requirements for a bill of exceptions found in Rule 372 ensure that the bill is accurate and complete. Obviously, this important purpose would be defeated if we were to excuse failure to comply with those requirements. That Lake's excluded deposition was on file with the trial court and subsequently accompanied the record on appeal is not sufficient to make it a proper bill of exceptions. See Indust-Ri-Chem Laboratory, Inc. v. Par-Pak Co., Inc., 602 S.W.2d 282, 297 (Tex.Civ.App.Dallas 1980, no writ); Victoria Comfort Air Co. v. Alamo Express, Inc., 529 S.W.2d 250, 252 (Tex.Civ.App.Corpus Christi 1975, no writ); Dallas Fountain & Fixture Co. v. Hill, 330 S.W.2d 648, 650 (Tex.Civ.App. Dallas 1959, writ ref'd n.r.e.); c.f. Wise v. Pena, 552 S.W.2d 196, 202 (Tex.Civ.App. Corpus Christi 1977, writ dism'd w.o.j.) (summary judgment evidence is not a substitute for bill of exceptions).
The second issue before this court is whether the trial court erred in admitting evidence concerning McInnes' consumption of alcohol on the day of the accident. McInnes claims that as a predicate for the admission of such evidence, Yamaha was required to produce some independent evidence of improper conduct on the part of McInnes prior to the accident. Yamaha responds that McInnes has waived this point of error, because his own counsel first brought up the subject of McInnes' *188 alcohol consumption. We agree with Yamaha.
A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character. Pouncy v. Garner, 626 S.W.2d 337, 340 (Tex.App.Tyler 1981, writ ref'd n.r.e.); Hughes v. State, 302 S.W.2d 747, 750 (Tex. Civ.App.Eastland 1957, writ ref'd n.r.e.); see Kutch v. Holly, 77 Tex. 220, 14 S.W. 32, 34 (1890). Counsel for McInnes made the first reference in front of the jury to McInnes' alcohol consumption. During his opening statement, McInnes' counsel said:
On that day [McInnes] took his motorcycle to Spot Cycle Shop, which is off State Highway 286. It was approximately 1:00 o'clock or shortly thereafter, and he left his motorcycle there. During the interim he played some pool while they worked on his motorcycle and he had a few glasses of beer.
Counsel for McInnes also introduced the first evidence concerning McInnes' alcohol consumption by reading to the jury McInnes' deposition, in which McInnes testified that he drank six glasses of beer prior to the accident. It is clear from the record that McInnes is in no position to complain of the admission of evidence that he consumed alcohol on the day of the accident. Thus, we do not reach the issue of whether Yamaha laid the proper predicate for the admission of such evidence.
We turn next to McInnes' complaint that the trial court erred in admitting "speculative" testimony of Dr. Rupp, a forensic pathologist called to the stand by Yamaha. On direct examination, Dr. Rupp calculated the amount of alcohol in McInnes' bloodstream at the time of the accident. His first calculation was based upon a notation made in McInnes' hospital records by Dr. Martin, the physician who treated McInnes after the accident. These hospital records were properly in evidence under Tex.Rev. Civ.Stat.Ann. art. 3737e. Dr. Martin had noted that McInnes was "slightly intoxicated" at 8:00 p.m. on the day of the accident. Dr. Rupp testified that in order for such an observation to have been made on a quadriplegic patient such as McInnes, McInnes' blood-alcohol level must have been .1 percent. Using an absorption rate of alcohol by the body of .02 percent per hour, Dr. Rupp extrapolated from this .1 percent figure and concluded that McInnes had a blood-alcohol level of .16 percent when the accident occurred at 5:00 p.m. He stated that this meant that McInnes had six or seven beers in his system at the time of the accident.
The parties agree that Dr. Martin's observation that McInnes was "slightly intoxicated" was an insufficient basis for Dr. Rupp's opinion that McInnes' blood-alcohol level was .1 percent at the time the observation was made. Therefore, whether it was error to admit this opinion is a question we need not decide; it is assumed to be so. The issue for decision is whether the trial court's error in admitting Dr. Rupp's opinion, and the testimony based thereon, presents grounds for a new trial. McInnes contends that putting Dr. Rupp's inadmissible testimony into evidence resulted in an improper jury finding that McInnes' failure to keep a proper lookout was a proximate cause of the accident.
The erroneous admission of testimony that is cumulative is ordinarily not reversibly harmful. Whitener v. Traders & General Ins. Co., 155 Tex. 461, 289 S.W.2d 233 (1956). The record establishes that the improperly admitted testimony of Dr. Rupp was cumulative of other evidence before the jury. Dr. Rupp himself gave admissible testimony based upon two blood-alcohol tests prepared from samples of McInnes' blood taken shortly after the accident. One test was taken at 5:30 p.m. and revealed a blood-alcohol level of .09 percent; the other test was conducted at 6:35 p.m. and indicated a blood-alcohol level of .131 percent. The tests themselves were properly admitted into evidence and were of probative force. Dr. Rupp's testimony based upon the test result of a .131 percent blood-alcohol level was very similar to his inadmissible testimony. McInnes correctly *189 points out that when Dr. Rupp was confronted on cross-examination with the 5:30 p.m. test indicating a blood-alcohol level of .09 percent, Dr. Rupp conceded that McInnes' blood-alcohol level might have been as low as .05 percent at the time of the accident. However, we fail to see how this overcomes the fact that Dr. Rupp gave admissible testimony which was substantially the same as his inadmissible testimony. We note also that the police officer who investigated McInnes' accident, Dr. Martin, and McInnes himself gave testimony from which the jury might have concluded that McInnes was under the influence of alcohol at the time of the accident. Clearly, the testimony of Dr. Rupp which was based upon the notation "slightly intoxicated" added little or nothing to the evidence properly before the jury. We conclude from an examination of the entire record that the error, if any, in the admission of this testimony was not such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.CIV.P. 503.
The fourth issue before us is whether the trial court erred in excluding testimony by Jean McInnes Saldamarco, McInnes' daughter, that McInnes told her soon after the accident that "the bike forced me off the road." Saldamarco testified that she visited McInnes in the hospital the day after the accident. McInnes was conscious but unable to speak. Saldamarco stated that she employed a system of communication whereby she would recite the letters of the alphabet and McInnes would blink his eyes when the letter he wanted to convey was said. In this manner, McInnes could, letter by letter, form words and sentences. McInnes' complaint is that the trial court excluded the following testimony, which is found in McInnes' bill of exceptions:
COUNSEL FOR McINNES: What was the question that you asked in regard to how the accident happened?
SALDAMARCO: I asked him how it happened.
COUNSEL FOR McINNES: And what was his answer?
SALDAMARCO: He told us that the bike forced him off the road.
McInnes asserts that this testimony should have been admitted to rebut Yamaha's charges that McInnes fabricated his lawsuit. We agree, but hold that exclusion of the testimony was not reversibly harmful.
The statement by McInnes to which Saldamarco testified was hearsay. This court, however, has previously recognized, as an exception to the hearsay rule, the admissibility of prior consistent statements to support a witness who has been charged with recent fabrication of his testimony.[2]Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298, 301-02 (Tex.1962); Houston & T.C. Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693, 695-96 (1914); Aetna Ins. Co. v. Eastman, 95 Tex. 34, 64 S.W. 863, 863 (1901). See R. Ray, Law of Evidence § 774 (Texas Practice 3d ed. 1980). One situation in which the theory of recent fabrication applies is when the opposing party seeks to impeach a witness by making imputations that such witness failed to speak at a time when he could have been reasonably expected to have done so. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d at 301. In this situation, prior consistent statements made before the declarant had a motive to rebut the charge of recent fabrication are admissible. Barmore v. Safety Casualty Co., 363 S.W.2d 355, 359 (Tex.Civ.App.Beaumont 1962, writ ref'd n.r.e.).
The record establishes that at various times during trial, Yamaha insinuated that McInnes had recently fabricated his testimony that the "wobble" or "shimmy" of his motorcycle caused the accident. For example, during voir dire, counsel for Yamaha stated:
Now, coming at it another way, Lindsey McInnes has a wreck and gets knocked out and there may not be any other competent *190 evidence as to what happened, and maybe a year or two or three later, Lindsey McInnes remembers that he thinks that the motorcycle shimmied, and you may want to weigh that to see how viable and credible it is.
During his opening statement, Yamaha's counsel made this assertion:
He [McInnes] continuously told his doctors that he had no memory of the accident, and two years to the day after the accident, sues the Yamaha Motor Corporation saying that it had manufactured a defective product, and even though his doctor says it is virtually impossible that anyone would remember ....
The following exchange occurred during cross-examination of McInnes by Yamaha:
Q. Who was the first person you told that your bike had shimmied?
A. Who was the first person I told that my bike had shimmied? Who was the first person I seen that my bike was shimmying, you said?
Q. Yes, sir.
A. I don't know what you mean.
Q. Was Mr. Mattioni [counsel for McInnes] the first person you told that your bike had shimmied?
A. No, sir.
* * * * * *
Q. Getting back to my question, Mr. McInnes. Did you tell Dr. Frank Martin that you had amnesia for the accident and could not remember anything about the accident?
A. No, sir.
Q. You could always remember the accident?
A. I remember everything before and everything afternot everything after not after the accident.
Clearly, Yamaha charged McInnes with recent fabrication, and the trial court erred in excluding the testimony of Saldamarco which was offered to rebut that charge. However, we hold that the error the trial court committed in excluding Saldamarco's statement was not such as to require a new trial. The exclusion of cumulative evidence is not reversible error. Reina v. General Accident Fire & Life Assurance Corp., Ltd., 611 S.W.2d 415 (Tex.1981). McInnes' account of what caused his accident was corroborated by the testimony of two other witnessesHubert Smith, the only eyewitness to the accident, and Randy Nelson, an expert in motorcycle design and accident reconstruction. We also point out that the excluded statement of McInnes that "the motorcycle forced me off the road" does not necessarily confirm McInnes' testimony that an uncontrollable wobble in the motorcycle caused his accident. The statement is obviously subject to some interpretation. To hold that this statement was admissible to rebut a charge of recent fabrication is one thing; to conclude that its admission probably would have led the jury to believe McInnes' account of the accident is quite another. We do not believe that the exclusion of Jean McInnes Saldamarco's testimony amounted to such a denial of the rights of McInnes as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.CIV.P. 503.
We conclude that the errors of the trial court were not such, separately or cumulatively, as to require a new trial of this case. The judgments of the trial court and court of appeals are affirmed.
NOTES
[1] A suggestion of death filed with this court indicates that McInnes died in December of 1983. However, we adjudicate this cause as if all parties were still living. See TEX.R.CIV.P. 369a.
[2] Under the Texas Rules of Evidence, effective as of September 1, 1983, a prior consistent statement offered to rebut a charge of recent fabrication is not included under the definition of hearsay. See TEX.R.EV. 801(e)(1)(B).