IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-001-CV





HONORABLE DAN MORALES, ATTORNEY GENERAL OF THE STATE OF TEXAS,



 APPELLANT


vs.





CHRYSLER REALTY CORPORATION,



 APPELLEE



 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY,



NO. 1723, HONORABLE DAVID PHILLIPS, JUDGE 



 




 This appeal arises from a statutory condemnation case. The State appeals from a
jury verdict and judgment in favor of Appellee, Chrysler Realty Corporation ("Chrysler").



THE CONTROVERSY



 This is another in a series of condemnation actions by the State to obtain property
for the widening of U.S. Highway 183. The property owned by Chrysler is a car dealership sales
facility located on the northbound IH-35 frontage road at the intersection of Blackson Avenue in
Austin, Texas. This condemnation proceeding concerned the taking of approximately four-thousand square feet of frontage from Chrysler's property. As a result of the condemnation
action, both parties introduced expert testimony as to the value of the part of the property being
taken as well as the resulting damage to Chrysler's remaining property. The jury returned a
verdict in Chrysler's favor for a total of $623,000. The trial rendered judgment. The State
appeals.

 The State brings forth sixteen points of error. In the main, the State complains
about the Court's charge to the jury. We will affirm.


DISCUSSION



Limiting Instruction on Community Damages


 In a series of these condemnation cases involving the U.S. Highway 183 project,
the State has taken the position that the landowner is attempting to recover statutory condemnation
damages that are non-compensable. See State v. Schmidt, 805 S.W.2d 25 (Tex. App.--Austin
1991, writ denied), State v. Munday Enterprises, 824 S.W.2d 643, (Tex. App.--Austin 1992, writ
requested). These non-compensable elements generally involve the loss of access to the
landowner's remaining property by the grade elevation rendered necessary by the condemnation
project, the loss of visibility resulting to the remainder property as a result of the elevated
roadway, and the construction disruption and inconvenience that results to the remainder property. 
We held in both Schmidt and Munday that while these items are not recoverable as separate items
of damage they are admissible evidence on the question of diminution in value to the landowner's
remainder property. In the instant cause, the trial was conducted after our opinion had been
handed down in Schmidt. As a direct result of the Schmidt opinion, the State, in this case,
adopted a different trial strategy. It introduced expert testimony that the remainder property had
been damaged by loss of access, visibility, and construction disruption, but joined issue with the
landowners on the amount of damage which had been sustained. Thus, evidence was offered by
both sides on damage to Chrysler's remainder property and it was conceded on the trial of this
case that some damage to the remainder property had been occasioned by the condemnation
project. (1)

 The State's points of error one through six complain of the failure of the trial court
to give a limiting instruction in the court's charge regarding the fact that the jury should not
consider any damage to the remainder property that would be in the category of "community
damages." (2)

 Chrysler argues that the trial court did not err in failing to give the requested
instruction in the court's charge because: (1) by sponsoring evidence through its own expert
witness on the so-called Schmidt elements of remainder property damages, the State waived the
right to request a limiting instruction on the very same elements of damage, and; (2) no evidence
of "community damages" was presented requiring a limiting instruction to be given. We agree.

 It is a fundamental tenet of appellate practice that a party must timely object to the
admission of evidence in order to complain on appeal. Tex. R. App. P. 52(a). The State
sponsored its own evidence of these damage elements through its own expert witness. The law
in Texas concerning complaining about one's own evidence is clear and unambiguous:


 A party on appeal should not be heard to complain of the admission of improper
evidence offered by the other side, when he, himself, introduced the same evidence
or evidence of a similar character.



McInnes v. Yamaha Motor Corp., U.S.A., 673 S.W.2d 185, 188 (Tex. 1984). The State in
essence argues that the trial court erred by failing to instruct the jury not to consider portions of
the State's own evidence and portions of the evidence offered by the landowner all of which was
received without objection. Clearly, the failure of the State to object to any of the allegedly
"tainted" evidence, which we have previously held in Schmidt and Munday to be admissible,
preserves nothing for appellate review.

 In addition, Chrysler argues that there is no evidence in the record for the
proposition that testimony was introduced which would even qualify for a limiting instruction on
the issue of "community damages." Again, we agree. The State cites this Court to some thirty-nine instances in the record where evidence of community damages was adduced. Of those, we
note that only three even occurred in the jury's presence. Those three instances came late in the
cross-examination of the State's own expert witness, Mr. Rudy Robinson. In all three instances,
the expert witness confirmed that those elements of damage would affect the market value of the
remainder property in question. Thus we cannot find in this record a single instance where
community damage testimony was sponsored by either party. A limiting instruction on the
general proscription regarding community damages would have only served to confuse the jury
in this case. The trial court property refused to grant the instruction requested. We reiterate our
holding in Munday that the term "general community damages" refers to the community at large
and is not limited to other condemnee-landowners of the project in issue. Munday, 824 S.W.2d
at 649. The State's points of error one through six are overruled.


Single Damage Issue Submission


 Just as in Munday, the trial court submitted this condemnation upon a single broad-form condemnation damage issue which required the jury to find the difference in market value
of the whole Chrysler tract as it existed before the condemnation project was initiated, as
contrasted with the Chrysler remainder property after the condemnation, taking into account the
effects of the condemnation project itself. (3)
 In points of error twelve and thirteen the State argues
that the trial court erred in refusing its requested jury issues. The State requested in separate
issues one question that would have required the jury to find the value of the part taken, and then
a second question requiring the jury to determine the decrease, if any, in the before and after
value of the remainder property. The Texas Supreme Court has recently held in a partial-taking
case that the submission requested by the State is actually the preferred method. See Westgate
Ltd. v. State, 35 Tex. Sup. Ct. J. 1042 (July 1, 1992). We conclude that the trial court's single
damage issue does not present reversible error for the following reasons.

 First, under the evidence presented in this record the State can show no harm from
the submission in question. The evidence from both sides was that the remainder property of
Chrysler had been damaged. The only issue in the case was the quantification of that damage
coupled with the value of the part taken. As we observed in Munday


 In contrasting the two submissions, that of the trial court as given and that of the
State as requested, it is difficult to understand the State's contention that a jury
would reach a different result in either instance. A jury's damage award which
finds the difference between Munday's entire tract before the condemnation as
contrasted with the value of the remainder tract after the condemnation should be
identically the same monetary award as the jury determining separately the value
of the part taken, and then the decrease of the value in the remainder property
before and after the condemnation. Munday, 824 S.W.2d at 651.



 Therefore, just as in Munday, we hold that the trial court's charge as applied to the
facts of this case did not result in harm to the State.

 Second, the State's requested issues, especially that of the damage to the remainder,
are not in substantially correct form. (4) Requested Jury Question No. 2 included the whole question
of "community damages" of which there was no evidence in the record. The trial court correctly
refused to submit an issue not raised by the evidence that would be confusing to the jury. 
Hernandez v. Southern Pac. Transp. Co., 641 S.W.2d 947, 953 (Tex. App.--Corpus Christi 1982,
no writ). Accordingly, the State's points of error twelve and thirteen are overruled.



Burden of Proof


 In points of error seven through eleven, the State contends that the trial court erred
in refusing to submit within the court's charge a requested instruction defining "burden of proof"
and apportioning that burden to Chrysler as the landowner. The trial court instructed the jury that
they were to answer the single damage issue based upon a preponderance of the evidence. The
definition of preponderance of evidence given by the trial court tracks precisely the language
prescribed by the state bar committee on pattern jury charges. See 1 State Bar of Texas, Texas
Pattern Jury Charges, P.J.C. 1.3, Introduction (5)(f) 1987. (5)

 Recent Texas procedure has submitted the burden of proof either through (a) a
global admonitory preponderance of the evidence instruction, or (b) within each jury question,
usually by the phrase "do you find from a preponderance of the evidence." Tex. R. Civ. P. 277. 
The preferred method used in pattern jury charge is by admonitory instruction. See 1 Pattern Jury
Charge, Introduction (5)(f). The court's charge in this case employed the global admonitory
instruction recommended by a pattern jury charge.

 The State would have required the trial court to inform the jury literally that the
burden of proof was on Chrysler. While under some circumstances such a request might be
appropriate, those circumstances were not present under the facts of this case. Both sides
conceded that there was some market value to the part of Chrysler's property being condemned
and both sides conceded that there was some damage to Chrysler's remainder property. The trial
court correctly instructed the jury that they were to quantify these damages as found by them, but
only based upon a preponderance of the evidence. Therefore, in a single damage issue submission
the trial court appropriately placed the burden of proof upon the party specifically arguing for a
monetary damage amount. As one leading treatise stated:


 Although most questions are framed in a way that calls for an answer of "yes" or
"no" or their equivalents, many forms of issues require a response in some other
form--a damages issue calls for an amount of money; . . . This form of submission
is not, in the ordinary case, subject to an objection that it fails to place the burden
of persuasion or that it places the burden equally on both parties.



34 Gus M. Hodges & T. Ray Guy, The Jury Charge in Texas Civil Litigation, § 53A (Texas
Practice 2d ed. 1988).

 Therefore, since the trial court properly included a preponderance of evidence
instruction regarding the single damage issue submitted, the State's points of error seven through
eleven are without merit and are accordingly, overruled.



Other Points


 In points fourteen and fifteen the State claims that the verdict was not supported
by sufficient evidence. Both parties called expert witnesses in this case. The State's experts felt
that the total damages sustained by Chrysler were $150,000 while Chrysler's experts testified to
$750,000. The jury's verdict of $623,000 was within the range of the testimony and was
supported by the evidence in this case. These points are overruled.

 Finally, in point of error sixteen the State claims that all of its points presented
cumulative error. Since we find no error present in the trial below, we conclude that the judgment
of the trial court should be in all things affirmed.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: November __, 1992

[Publish] [Do Not Publish]
1.   The State's expert witness testified that the value of the part taken plus the damage to the
landowner's remainder property totaled $150,000 while Chrysler's expert witness estimated
the value and damage to the remainder at $750,000.
2.   The requested instruction read as follows:


 You are instructed that in answering Jury Question No. 2, you shall consider an
injury, if any, or benefit, if any, that is peculiar to Chrysler Realty Corporation
and that relates to Chrysler Realty Corporation's ownership, use, or enjoyment of
the subject property, but you may not consider an injury, if any, or benefit, if any,
that Chrysler Realty Corporation experiences in common with the general
community.

3.   The jury issue actually submitted was:


QUESTION



 What is the difference in Fair Market Value between:


 a. The whole Chrysler Realty property, without reference to or consideration of the
condemnation; and


 b. The remainder of the Chrysler Realty property, taking into consideration the effects
of the condemnation.


 Answer in dollars and cents: 

4.   (STATE'S) REQUESTED JURY QUESTION NO. 2



 Excluding increase in value, if any, and decrease in value, if any, by reason of benefits
or injuries received by Chrysler Realty Corporation in common with the community generally
and not peculiar to Chrysler Realty Corporation and connected with its ownership, use and
enjoyment of the particular tract of land across which the strip of land has been condemned,
and taking into consideration the uses to which the strip condemned is to be subjected, what do
you find from a preponderance of the evidence were the damages, if any, to the remainder of
Chrysler Realty Corporation's tract of land, as improved, immediately after the taking of the
strip condemned for highway purposed on March 22, 1990.


 Answer in dollars and cents, if any.
5.   The trial court in this case obviously omitted P.J.C.'s recommended language
concerning "yes" or "no" answers since the charged contained no "yes" or "no" questions.