**Affirmed and Memorandum Opinion filed May 21, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00438-CV

---

### IN THE INTEREST OF L.D.W. AND V.D.W., CHILDREN

---

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause No. 28700**

---

## M E M O R A N D U M    O P I N I O N

Mother appeals the trial court's order granting Father's counterpetition to modify the parent-child relationship, in which Father was appointed sole managing conservator of their children V.D.W. and L.D.W. and Mother was appointed possessory conservator of the children. We affirm.

# I. BACKGROUND

On July 16, 2007, the trial court signed the final decree of divorce and appointed Mother and Father as joint managing conservators of their two children, L.D.W., who was five years old, and V.D.W., who was almost three years old. Father had the exclusive right to designate the primary residence of L.D.W., and Mother had the exclusive right to designate the primary residence of V.D.W. After the divorce, Father married D.W., who had two children, a daughter S.C. and son R.C. D.W.'s two children, S.C. and R.C., live with Father and D.W.

On December 12, 2008, Mother filed a petition to modify the parent-child relationship. Mother alleged that V.D.W. made a June 2008 outcry to her, his treating doctor, and his therapist. The substance of the outcry was that S.C. and D.W. had touched his penis with Father's knowledge. She requested that the conservatorship of L.D.W. be modified and Father's visitation with both L.D.W. and V.D.W. be supervised. On March 13, 2009, Father filed his counterpetition to modify the parent-child relationship. Father requested that he be appointed sole managing conservator of V.D.W. with the right to designate his primary residence due to Mother's "continued false allegations to Child Protective Services, and continued mental abuse of the children."

On April 8, 2009, the trial court ordered Dr. Mary Alvarez to conduct a psychological examination of Mother, Father, L.D.W., and V.D.W., make recommendations to the court, and prepare, and provide to the parties' attorneys, a written report with the findings, including results of all tests, diagnoses, and conclusions. The trial court also signed temporary orders on April 8, 2009, providing that Father was not to permit V.D.W. to be left alone with S.C. during his periods of possession of V.D.W.

On November 3, 2010, Mother's attorney withdrew from the case. On the first day of trial, February 14, 2011, Mother's newly hired attorney filed a motion for continuance, which the trial court denied. The trial court conducted a hearing on the competing motions to modify on February 14 and 15, 2011. At the end of the hearing, the trial court announced that it was denying Mother's petition for modification, granting Father's counterpetition for modification, and appointing Father as sole managing conservator of L.D.W. and V.D.W. On April 11, 2011, the trial court signed the order in the suit to modify the parent-child relationship appointing Father sole managing conservator of L.D.W. and V.D.W. and Mother possessory conservator of L.D.W. and V.D.W. Mother brings this appeal challenging the trial court's order.

## II. Evidentiary Issues

### A. Psychological Report

In her first issue, Mother complains that the trial court abused its discretion by excluding a report prepared by Dr. Mary Alvarez from evidence. Evidentiary decisions are committed to the sound discretion of the trial court. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Id.* To show that the trial court abused its discretion, the appellant must demonstrate that (1) the court erred in not admitting the evidence; (2) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused the rendition of an improper judgment. *Watts v. Oliver*, No. 14-11-00637-CV, — S.W.3d —, 2013 WL 266050, at *4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, no pet.); *Coterill-Jenkins v. Tex. Med. Ass'n Health Care Liab. Claim Trust*, 383 S.W.3d 581, 593 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

On April 8, 2009, the trial court ordered Dr. Alvarez to conduct a psychological evaluation of Mother, Father, L.D.W. and V.D.W., to make recommendations to the court, and to prepare, and provide to the attorneys, a written report. Mother's attorney, Manuel Munoz, attempted to question Father about what was contained in Dr. Alvarez's report. The report was not in evidence and had not been offered. The following is a verbatim exchange regarding his attempted questioning:

> Q. MR. MUNOZ [MOTHER'S ATTORNEY] Okay. And can you tell me what it was that [Dr. Alvarez's report] says?
>
> MS. MCCLENDON [AMICUS ATTORNEY FOR CHILDREN]: Hearsay, Your Honor.
>
> THE COURT: Sustained.
>
> MR. MUNOZ: Your Honor, if I may, the Court ordered a psychological evaluation.
>
> THE COURT: Yes, sir.
>
> MR. MUNOZ: And the Court also asked that Ms. Alvarez make the Court known its report and its findings. That is a copy of Dr. Alvarez's, the court-ordered psychologist, psychiatrist's, report with respect to her recommendations and her findings.
>
> THE COURT: Do you have an agreed order somewhere that indicates that her report would be admissible in evidence without regards [sic] to the rules of evidence?
>
> MR. MUNOZ: I — I have —
>
> THE COURT: Not necessarily in that terminology; but you know what I'm saying, that y'all would stipulate to her report.
>
> MR. MUNOZ: I have — I don't have an agreed Rule 11 or agreement. I do have an order that says — signed by this Court which indicated a psychological examination, to make any and all appropriate examinations and recommendations to the Court.
>
> THE COURT: Okay.
>
> MR. MUNOZ: I think in the best interest of the child that the Court — speaks to the fact that the Court would want to see that

report.

THE COURT: Well, there's [sic] two things. There is [sic] multiple ways of that being done. One is through an amicus or an ad litem, depending on the nature of the proceeding. The other one is being presented into evidence. When you present it into evidence, then that's a different matter altogether and its subject to the rules of evidence. So, the objection is sustained.

We do not reach the question of whether evidence was erroneously excluded unless the appellant has preserved the complaint for appellate review. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex. 1984). To complain on appeal that the trial court erroneously excluded evidence, the complaining party must have offered the evidence during the trial and obtained an adverse ruling from the trial court. *Malone v. Foster*, 956 S.W.3d 573, 578 (Tex. App.—Dallas 1997), *aff'd*, 977 S.W.2d 562 (Tex. 1998); *Estate of Veale, v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 242 (Tex. App.—Houston [14th Dist.] 1995, writ denied).

In summary, the above exchange shows that Mr. Munoz asked Father about the report, the children's amicus attorney, Kelly McClendon, objected to the testimony on the basis of hearsay, the trial court sustained the objection, the trial court explained the ways to admit the report into evidence, and the trial court sustained the hearsay objection a second time. However, Mother never offered Dr. Alvarez's report into evidence.

Moreover, there is nothing in the record to show that Mother made an offer of proof or a bill of exception. *See* TEX. R. EVID. 103;[1] TEX. R. APP. P. 33.2.[2] Dr.

---

[1] An offer of proof consists of making the substance of the evidence known to the court and must be made before the court, the court reporter, and opposing counsel, and preserved in the reporter's record. *In re Estate of Miller*, 243 S.W.3d 831, 837 (Tex. App.—Dallas 2008, no pet.).

[2] When there is no offer of proof made before the trial court, the appellant must introduce the excluded evidence into the record by a formal bill of exception. *In re Estate of Miller*, 243 S.W.3d at 837. To complain on appeal about a matter that would not otherwise appear in the

5

Alvarez's report is included in the reporter's record. However, the fact that the excluded report is in the appellate record not sufficient to make it a proper bill of exception. *McInnes*, 673 S.W.2d at 187.[3] Therefore, Mother has not preserved this complaint for appeal.

Mother further argues that the trial court sua sponte should have taken judicial notice of Dr. Alvarez's report. Texas Rule of Evidence 201 governs "judicial notice of adjudicative facts." TEX. R. EVID. 201(a). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably be questioned." *Id.* 201(b). It is mandatory for the court to take judicial notice "if requested by a party and supplied with the necessary information." *Id.* 201(d). Mother did not request the court to take judicial notice of Dr. Alvarez's report. The trial court, however, may take judicial notice, whether requested or not. *Id.* 201(c).

As addressed above, Dr. Alvarez's report was not properly made a part of the appellate record, and we cannot determine whether it would meet the requirements for an adjudicative fact or whether the trial court abused its discretion by failing to sua sponte take judicial notice of her report.

---

record, the appellant must file a formal bill of exception within thirty days of filing the notice of appeal, including the precise evidence the party desires admitted. *Id.*

[3] Mother refers us to a copy of Dr. Alvarez's report contained in the appendix to her brief. However, we do not consider documents that are attached as an appendix to an appellate brief that are not part of the appellate record. *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 342 n.2 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 292–93 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

## B. Medical Records

Mother also complains that the trial court abused its discretion by admitting only thirteen pages out of over 300 pages of V.D.W.'s medical records. Mother argues that the thirteen pages that the trial court admitted "were not as effective as the entire record itself" in supporting her petition to modify.

Mother's former attorney, Jimmie Brown, Jr., filed one business records affidavit of the custodian of medical records of the Harris County Hospital District and two business records affidavits of the custodian of medical records of the MLK Clinic, which is part of the hospital district; the medical records were attached to the three affidavits.

As with the prior expert report, Mr. Munoz attempted to question Father about what was in the medical records. Ms. McClendon then objected to Mr. Munoz's reading something into the record that was not in evidence. Mr. Munoz told the trial court that the medical records were in evidence because the business records affidavit for the custodian of medical records for the hospital district was on file. The trial court explained that they were not in evidence until he tendered and offered them. When Mr. Munoz tendered the medical records to Ms. McClendon and Father's attorney, Lynn Foster, they objected on two grounds: hearsay and lack of predicate for the expert opinions contained in the records. Mr. Munoz then stated that he did not intend to offer all the medical records into evidence, and the following verbatim discussion took place:

> MR. MUNOZ: I'm not going to introduce all of them, Judge. I was just going to do these — just part of them. And I —
>
> THE COURT: Well, why don't you show them the part that you want to introduce and see if there's an objection to that?
>
> *  *  *
>
> MR. MUNOZ: That is first one, but I've dog-eared all the ones

7

that I want to introduce in the Court's file and I —

THE COURT: You've dog-eared what you are introducing, not what you are not introducing?

MR. MUNOZ: Yes, sir. It's what I intend to introduce, I've dog-eared.

\*     \*     \*

THE COURT: I don't have any problem with these four that are dog-eared. So, as to — all right, those items that he has dog-eared, I'm admitting. I don't know how y'all want to mark that within the exhibit on 2, on Exhibit 2.

\*     \*     \*

THE COURT: Okay. I don't have a problem with the ones he's dog-eared. They are denied as is, but at break you will pull the ones dog-eared out and make a copy. Those will be remarked and are admitted.

The "dog-eared" pages that the trial court admitted were marked as Petitioner's Exhibits 2A and 3A.

It is clear from the above discussion that Mr. Munoz intended to introduce only certain pages of medical records and did not complain about the remainder of the medical records not being admitted. Under the invited error doctrine a party cannot complain on appeal that the trial court took a specific action that the complaining party requested. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (per curiam). Mother cannot now complain on appeal about the trial court's admitting only the medical records comprising Petitioner's Exhibits 2A and 3A into evidence. Moreover, Mother did not make a bill of exception. While the medical records that were not admitted into evidence are included in the reporter's record, this is not sufficient to make it a proper bill of exception. *McInnes*, 673 S.W.2d at 187. Therefore, Mother has both waived and failed to preserve this complaint on appeal.

8

We overrule Mother's first issue.

## C. CPS Records

In her second issue, Mother contends that the trial court erred by admitting only part of the CPS records, namely "only those dates that were favorable to [Father's] case." On August 24, 2009, the parties stipulated that the documents were CPS business records, and Father's attorney would not have to "call back the CPS worker to lay that predicate." Mr. Foster, Mr. Brown, and Ms. McClendon signed the stipulation. When Mr. Foster was questioning Father, he offered the CPS records into evidence. Mr. Munoz objected stating he recognized that Mr. Brown had signed the stipulation, but Mr. Munoz was not going to waive any objection about what records Mr. Foster intended to introduce. Mr. Munoz specifically objected to the admission of any CPS records dated prior to the date of the July 16, 2007 divorce decree. The trial court stated that it would admit the CPS records "from the date of divorce forward." Mr. Foster responded that all the CPS records, including those dated prior to the July 16, 2007 divorce decree, were relevant. The trial court rejected Mr. Foster's argument and stated, "I figure if you got two years or so in here, I don't really need to go much further behind that."

When Father's testimony resumed, Mr. Munoz objected that Father was reading from a document listing the dates of the different CPS investigations. Mr. Foster responded that Father was refreshing his memory and stated that his office had generated the document. The trial court sustained Mr. Munoz's objection, and instructed Mr. Foster to find the pages from the CPS records, Respondent's Exhibit 1, that Father would use to refresh his memory. Mr. Foster marked those documents as Respondent's Exhibits 1A and 1B, which were entitled, "Investigation Report," and listed the CPS "Intake Date[s]" and disposition of the investigations.

9

On appeal, Mother claims she did not have the right to cross-examine Father on the entire contents of the CPS records and she should "be provided a fair opportunity to present those portions from the record that contradict or clarify [Father's] evidence from the CPS record tendered by [Father]." She claims those portions of the CPS records admitted into evidence were favorable to Father's case. Although it is difficult to discern, Mother appears to be complaining about the CPS records that were marked as Respondent's Exhibits 1A and 1B. However, Exhibits 1A and 1B were part of the CPS records the trial court admitted—that is, they were dated after July 16, 2007—the date of the divorce. Therefore, the trial court ruled exactly as Mother requested—the trial court excluded those CPS records dated prior to the July 16, 2007 divorce decree. Again, Mother cannot complain on appeal about the very ruling she requested. *See Tittizer*, 171 S.W.3d at 862 (explaining that, under the invited error doctrine, "a party cannot complain on appeal that the trial court took a specific action that the complaining party requested").

We overrule Mother's second issue.

### III. CONSERVATORSHIP ISSUES

### A. Material and Substantial Change

In her third and fourth issues, Mother contends that the evidence is legally and factually insufficient to support the findings of material and substantial change.

We review a trial court's decision to modify conservatorship for a clear abuse of discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (op. on reh'g). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or

10

principles, or when it fails to correctly analyze the law. *In re A.B.*, 368 S.W.3d 850, 854 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds of error, but are factors in assessing whether the trial court abused its discretion. *In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.). To determine whether the trial court abused its discretion, we consider whether the trial court (1) had sufficient information on which to exercise its discretion; and (2) erred in its application of discretion. *In re C.A.M.M.*, 243 S.W.3d 211, 220 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

When findings of fact are neither properly requested nor filed, we imply all necessary findings of fact to support the trial court's order. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). When the appellate record includes the reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency the same as jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam).

In determining whether there is legally sufficient evidence, we consider the evidence in the light most favorable to the finding if a reasonable fact finder could, and disregard evidence contrary to the finding unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)). When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We defer to the trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute our

11

judgment for the trial court's. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The trial court does not abuse its discretion if evidence of a substantive and probative character exists to support its decision. *In re J.C.*, 346 S.W.3d at 193.

A trial court may modify a conservatorship order if (1) modification would be in the best interest of the child; and (2) the circumstances of the child, a conservator, or other person affected by the order have materially and substantially changed since the date of the rendition of the prior order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West Supp. 2012). In determining whether a material and substantial change of circumstance has occurred, the fact finder is not confined to rigid or definite guidelines; instead, the determination is fact-specific and must be made according to the circumstances as they arise. *In re A.L.E.*, 279 S.W.3d at 428. Material changes may include (1) the marriage of one of the parties; (2) poisoning of a child's mind by one of the parties; (3) change in the home surroundings; (4) mistreatment of a child by a parent or step-parent; or (5) a parent's becoming an improper person to exercise custody. *Arrendondo v. Betancourt*, 383 S.W.3d 730, 734–35 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A course of conduct pursued by a managing conservator that hampers a child's opportunity to favorably associate with the other parent may suffice as grounds for redesignating managing conservators. *Id.* at 735. A material and substantial change in circumstances may be established by either direct or circumstantial evidence. *Id.*

Mother testified that she had concerns about V.D.W. in 2007 and 2008 after the divorce. According to Mother, V.D.W. tried to kiss her inappropriately on the mouth in December 2007. Mother also testified that she observed that V.D.W.'s penis was red in January 2008 and took him to the hospital, where she was told that

it could be normal irritation or accidental trauma. Mother testified that V.D.W. told her, after a visitation at Father's house, that his stepsister, S.C., had touched him.

Mother stated that V.D.W. had been in therapy with different therapists since 2008. Mother testified that she told the therapist what V.D.W. told her every time she took him to the therapist. The therapists reported the allegations to CPS. As a consequence, there had been ten referrals to CPS since the divorce involving allegations that Father, D.W., S.C., and R.C. had been sexually inappropriate with V.D.W. CPS did not believe that V.D.W. was being sexually abused, and every CPS referral was "ruled out." Despite every CPS referral having been ruled out, Mother still believed the abuse was taking place. The last allegation of abuse was in July 2010. After a conversation with V.D.W.'s therapist, Mother would not allow Father's visitations with V.D.W. That CPS referral was ruled out.

In contrast, Father testified that "[V.D.W.] has been made to lie" about the alleged abuse. Father testified that CPS had interviewed V.D.W. ten times since the divorce, and a forensic interviewer had interviewed V.D.W. twice. Father testified that V.D.W. "has been to so many different doctors, seen by so many people, been poked, prodded on, and it's — not right. And that's since he was 3." Father further testified that V.D.W had been "seen by people and therapists and doctors one after the other . . . [and] it is very heartbreaking at times."

Since the divorce, V.D.W. had been subjected to numerous CPS interviews, as well as visits to doctors and therapists. Mother claimed that she did not call CPS. However, even if the trial court found this claim to be credible, undisputed evidence shows that Mother reported to every therapist what V.D.W. said regarding the alleged abuse. Thus, the numerous CPS referrals were the consequence of Mother's actions.

13

We consider the above evidence and defer to the trial court's prerogative to determine credibility. The trial court was entitled to believe the Father's testimony about V.D.W. being made to lie and about the disruptive effect that the CPS reports had on V.D.W. The trial court was entitled to disbelieve Mother's accounts of V.D.W. reporting. A parent's mistreating a child or becoming an improper person to exercise custody can be a material and substantial change. *Arrendondo*, 383 S.W.3d at 734–35. Thus, we conclude that the evidence is legally and factually sufficient to support a finding of material and substantial change since the divorce in July 2007 to support the appointment of Father as sole managing conservator of V.D.W. We overrule Mother's third and fourth issues.[4]

## B. Best Interest of the Child

In her fifth issue, Mother challenges the legal and factual sufficiency of the evidence to support a finding of best interest of the child. "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002 (West 2008). The trial court has wide latitude in determining the best interest of the child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 551 (Tex. 1982).

To determine the best interest of the child, a court may consider the following factors: (1) desires of the child; (2) emotional and physical needs of the

---

[4] Mother further complains that the trial court based its decision on past experience involving a "child who had allegedly been abused." The trial judge explained that he had been appointed attorney ad litem a number of years earlier to represent a ten-year-old child who had allegedly been abused. The allegations were false, and the district attorney refused to prosecute based on the allegations. The child repeated verbatim the mother's story with the same adult terminology and started to believe that the abuse had happened. The trial judge stated that he did not "want continued false allegations made part of [V.D.W.'s] life." After reviewing the record, it is clear that the trial judge made his ruling based on the evidence presented at the hearing, not on the facts of a previous case.

14

child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals involved; (5) programs available to those individuals to promote the best interest of the child; (6) plans for the child by these individuals; (7) stability of the home; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omission of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In the specific context of the modification of a conservatorship, a court may also consider the child's need for stability and the need to prevent constant litigation regarding the conservatorship of the child. *In re C.A.M.M.*, 243 S.W.3d at 221. Proof of best interest is not limited to these factors, nor do all factors always apply in every case. *In re A.R.*, 236 S.W.3d 460, 480 (Tex. App.—Dallas 2007, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). The focus is on the best interest of the child, not the best interest of the parent. *Id.*

As discussed above, the numerous CPS referrals and subsequent investigations were the result of Mother's reporting to every therapist what V.D.W. told her about the alleged abuse. Father believed that Mother made V.D.W. lie about the alleged abuse. The evidence showed that V.D.W. had been subjected to numerous interviews by CPS and forensic interviewers, and V.D.W. "has been to so many different doctors, seen by so many people, been poked, prodded on." Father described what V.D.W. has gone through as "very heartbreaking at times." Mother admitted that it would be emotionally damaging for a child to be subject to CPS interviews for false allegations. Mother believed the abuse was happening even though CPS had ruled out every referral after an investigation. The trial court was entitled to believe Father over Mother.

Further, the trial court was entitled to conclude that Father demonstrated cooperation with efforts to resolve V.D.W.'s best interests though he disputed Mother's account. Specifically, on April 8, 2009, the trial court entered a temporary order providing that Father was not to permit V.D.W. to be left alone with S.C. during his periods of possession of V.D.W. Father testified that, pursuant to the trial court's order, V.D.W. and S.C. were never left alone. However, Father testified V.D.W. never told him that anyone had touched him, and he never observed any inappropriate behavior among V.D.W., L.D.W., S.C., or R.C.

By contrast, the trial court was entitled to observe Mother's behavior regarding V.D.W.'s best interest. Specifically, in 2010, the parties and CPS agreed to an injunction prohibiting CPS from interviewing V.D.W., and, if an issue arose, the parties were to contact the court. Despite the injunction, Mother took V.D.W. to CPS. Father testified, with regard to the investigations, that he is "tired of [the children] going through all of this. You know, I want them to lead as best — what a normal life consists of nowadays."

We conclude that the evidence is legally and factually sufficient to support a finding that the appointment of Father as sole managing conservator is in the best interest of V.D.W. We overrule Mother's fifth issue.

## IV. MOTION FOR CONTINUANCE

In her sixth issue, Mother contends that the trial court abused its discretion by denying her motion for continuance. A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or operation of law. TEX. R. CIV. P. 251. We review the trial court's order denying a motion for continuance for a clear abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its

discretion when it reaches a decision so arbitrary and unreasonable as to amount to clear and prejudicial error of law. *Id.*

The trial court's docket sheet reflects that Mother's former attorney, Mr. Brown, withdrew on November 3, 2010, and the trial court ordered him to turn over the file to Mother by 5:00 p.m. on November 5, 2010. The docket sheet also shows that the trial court ordered Mother to appear on February 14, 2011.

On the morning of the hearing, February 14, 2011, Mother's new counsel, Mr. Munoz, filed a written motion for continuance in which he asserted:

1. This case is presently set for Trial and Enforcement on Monday, February 14, 2011, at 9:00 a.m.

2. The Petitioner has been without funds to hire an attorney to represent her interest in this matter.

3. The undersigned attorney was just retained Saturday, February 12, 2011 to represent Petitioner . . . in this matter.

4. That the undersigned attorney needs additional time to Subpoena relevant and necessary witnesses to testify to important issues regarding this cause.

5. That the undersigned attorney needs additional time to Subpoena relevant and necessary reports from Brazoria County Texas Department of Family and Protective Services which address important issues regarding this cause.

6. That the undersigned attorney needs additional time to Subpoena relevant and necessary medical reports which address important issues regarding this cause.

7. That attorney for Petitioner needs additional time to prepare and interview witnesses relevant to this cause.

It appears that the trial court heard, and ruled on, Mother's motion for continuance prior to the hearing. However, there is no reporter's record of the hearing on the motion for continuance. At the beginning of the modification hearing and on the record, Mother reurged her motion for continuance "for the

reasons stated in my Motion for Continuance, the short time that I've been on the case. I was retained and had an attorney/client relationship since Saturday, February the 12th."[5] The trial court denied the motion on the record.

Mother relies on the Texas Supreme Court's opinion in *Villegas v. Cater* as factually analogous to her case. 711 S.W.2d 624 (Tex. 1986). In *Villegas*, the trial court allowed the plaintiff's attorney to withdraw two days before trial. *Id.* at 625. The plaintiff appeared for trial two days later without an attorney and told the trial court that he wanted time to hire an attorney. *Id.* The plaintiff's former attorney refused to turn over the file to the plaintiff. *Id.* at 626. The plaintiff explained that there was another attorney he wanted to hire, but that attorney would not take the case until he had seen the file. *Id.* The trial court denied the request for a continuance and awarded judgment in favor of the defendants. *Id.* The Texas Supreme Court held that the denial of the plaintiff's motion for continuance was an abuse of discretion. *Id.*

The *Villegas* court explained that, "when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Id.* at 626. The court further explained that before the trial court allows an attorney to withdraw, it should see that the attorney has complied with the Code of Professional Responsibility: "[A] lawyer should not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client,

---

[5] Mr. Munoz further argued at the hearing that he needed a one-day delay to find an interpreter for Mother because "she has a communication problem with regard to the English language." When the trial court asked the amicus attorney, Ms. McClendon, if she had any problem communicating with Mother, Ms. McClendon responded that she had not and further stated that Mother had participated in prior court proceedings and no issue was raised concerning any problem Mother had with communicating in English. No further record was made regarding the necessity for an interpreter other than Mr. Munoz's and Ms. McClendon's statements.

including giving due notice to his client allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules." *Id.* (internal quotes and citations omitted).

*Villegas* is distinguishable from this case. In *Villegas*, the plaintiff's attorney withdrew two days before trial and would not turn over the file to the plaintiff. Here, the trial court allowed Mother's attorney to withdraw on November 3, 2010, and ordered Mother to appear for trial on February 14, 2011, which was more than two months after her attorney had withdrawn. Also, Mother has not alleged that her former attorney refused to turn Mother's file over to her. In her brief, Mother quotes *Villegas* for the proposition that the trial court must give a party adequate time to secure new counsel and time for new counsel to investigate the case and prepare for trial when it allows an attorney to withdraw voluntarily. Mother, however, did not complain in her written motion for continuance that the trial court did not give her adequate time to obtain new counsel, and we have no reporter's record showing that she raised this argument at the hearing on her motion for continuance. In any event, Mother had more than two months in which to find an attorney before trial, and she has not shown what efforts she made to find new counsel.

Further, Mother's request was completely without specifics. Mother's motion for continuance stated that her attorney needed additional time to subpoena unnamed witnesses, subpoena CPS reports, subpoena medical reports, and prepare and interview unnamed witnesses. Although Mother stated that the witnesses and the reports were "relevant and necessary," she did not identify those witnesses, what testimony she expected to elicit from them, or why such testimony was material. Nor did Mother explain what medical records or CPS records she needed

19

to subpoena or why those records were relevant to the issues at trial. *See Standard Sav. Ass'n v. Cromwell*, 714 S.W.2d 49, 51 (Tex. App.—Houston [14th Dist.] 1986, no writ) ("Absent a strong and specific showing of what additional preparation for trial might have been made, no abuse of discretion [in denying motion for continuance] is shown."). Even now, on appeal, Mother does not identify witnesses or documents that were relevant and necessary but unavailable on February 14, 2011, or without subpoena. Moreover, Mother has not explained why, when she was pro se, she could not have subpoenaed the "relevant and necessary" witnesses and reports.

On this record, we cannot conclude that the trial court abused its discretion by denying Mother's motion for continuance. We overrule Mother's sixth issue.

## V. CONCLUSION

Having overruled all of Mother's issues, we affirm the trial court's judgment.

/s/    Sharon McCally
        Justice

Panel consists of Justices Boyce, McCally, and Donovan.